## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **B.L.,** | : |
| | : |
| **Plaintiff,** | : |
| **v.** | : **3:15-CV-1327** |
| | : **(JUDGE MARIANI)** |
| **MARIROSA LAMAS, et al.,** | : |
| | : |
| **Defendants.** | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Currently before the Court is Magistrate Judge Carlson's Report and

Recommendation ("R&R"), (Doc. 44), on Defendants' Motion to Dismiss, (Doc. 12).

Defendants have raised Objections to the R&R, (Doc. 45), that have been fully briefed,

(Docs. 46, 47, & 48). After *de novo* review of the R&R, this Court sustains in part and

overrules in part Defendants' Objections and adopts in part the R&R for the reasons set

forth within the R&R and for the reasons set forth below. Because the Court adopts the

R&R's Statement of Facts and of the Case, (Doc. 44 at 1-8), which were not subject to any

objections, the Court need not recite them here.

### II. OBJECTIONS TO THE R&R

Defendants raise four separate objections to the R&R. The Court will address each

in turn.

## A. Count II

Defendants first contend that it was an error for the R&R to recommend denying the Motion to Dismiss as it pertains to Count II of the Complaint. (Doc. 46 at 3-6). Count II of the Complaint alleges that Defendants Lamas, Glunt, Garman, Tice, Hoover, Vance, Harpster, and Rogers are liable under the doctrine of state-created danger. (Doc. 1 at 49). Defendants object on three different grounds: (1) the heading of Count II was brought as an Eighth Amendment claim while the state-created danger doctrine falls under the Fourteenth Amendment; (2) the count should have been dismissed pursuant to the more-specific-provision rule; and (3) the Complaint failed to allege all four elements of the state-created danger doctrine, specifically the foreseeability of harm and affirmative acts requirement. (Doc. 46 at 3-6).

The Court will only address Defendants' second argument, as that argument provides a meritorious basis to dismiss Count II.[1] Under the more-specific-provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*,

---

[1] The Court notes that Magistrate Judge Carlson had no opportunity to address such an argument, as Defendants have raised it for the first time here. In fact, Defendants admit to as much in one of their submissions. (Doc. 48 at 3). They contend, however, that "the argument did not come to light" until the issuance of a report and recommendation in *Beenick v. Lefebvre*, 2016 WL 5402249 (M.D. Pa. 2016). (Doc. 48 at 3). As discussed below, however, the case that forecloses Plaintiff's state-created danger claim was decided in 2010, five years prior to Defendants filing their Motion to Dismiss. Thus, this argument was fully available to Defendants when they filed their Motion to Dismiss and should have been raised in the first instance.

2

520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997). In *Betts v. New Castle Youth Development Center*, the Third Circuit discussed this rule's application to a state-created danger doctrine in the prisoner context. 621 F.3d 249, 259-61 (3d Cir. 2010).

*Betts v. New Castle Youth Development Center* involved a youth detention center which provided room for the residents—youths that had been adjudicated delinquent—to play football but which did not provide any safety equipment. *Id.* at 252-53. Betts, one of these youths, was playing football when he sustained a spinal cord injury while attempting to tackle another player. *Id.* at 253. In response, Betts brought both an Eighth Amendment claim and a Fourteenth Amendment state-created danger claim against the youth detention center. *Id.* In analyzing the Fourteenth Amendment claim, the Third Circuit found that "Betts's claims concern his conditions of confinement and an alleged failure by Defendants to ensure his safety. Because these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts's substantive due process claims." *Id.* at 261.

Here, the substance of Count II—that various prison officials either put Plaintiff in an environment in which he was raped, or failed to take action to prevent the rape from occurring—is a direct challenge to the conditions of his confinement. (Doc. 1 at 49-51). Therefore, as a direct challenge to the conditions of his confinement, this allegation falls within the Eighth Amendment's prohibition on cruel and unusual punishment. As such,

*Betts* forecloses Plaintiff's Fourteenth Amendment[2] state-created danger claim under the more-specific-provision rule.

Plaintiff responds by arguing that this Court should not follow *Betts* because its statements about the more-specific-provision rule are dicta and that, alternatively, *Betts* impermissibly expanded the rule in contradiction to the Supreme Court precedent that created the rule and therefore *Betts* should be disregarded by this Court. (Doc. 47 at 4-7). First, the Court does not agree that the holding in *Betts* was dicta. It explicitly addressed Betts's Fourteenth Amendment claim and determined that it should be dismissed in light of the more-specific-provision rule. *Betts*, 621 F.3d at 259-61. Second, even if Plaintiff's second argument had merit, this Court is not empowered to overturn binding Third Circuit precedent.

Thus, in light of the more-specific-provision rule, the Court will sustain Defendants' Objection and grant Defendants' Motion to Dismiss as it pertains to Count II of Plaintiff's Complaint.

---

[2] Plaintiff also argues that a state-created danger claim can be brought under the Eighth Amendment, and cites, with no pincite, to *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307 (3d Cir. 2014). (Doc. 47 at 3). *Barkes*, however, provides no support for that proposition. In fact, that case recognizes that the doctrine stems from the Fourteenth Amendment. *See id.* at 321 ("What the Dissent attempts to do is shoehorn into the Eighth Amendment the deliberate-act requirement adopted in our state-created-danger jurisprudence. In that context, we have held that '[l]iability . . . [must be] predicated upon the states' affirmative acts which work to the plaintiff's detriment in terms of exposure to danger. It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.'") (alterations original) (emphasis omitted) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)). To be sure, the state-create danger doctrine flows from the Due Process Clause of the Fourteenth Amendment. *See Kneipp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996).

## B. Count VIII

In Count VIII, Plaintiff alleges that he was threatened, first by Defendant Zong, then by other Defendants, that if he told anyone about the abuse, Defendants would file fake misconduct charges against him. (Doc. 1 at 57). Plaintiff alleges that those threats intimidated him to such an extent that he did not use the prison grievance system to report Zong's assaults. (*Id.*). Plaintiff further contends that the above establish a viable First Amendment retaliation claim.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Michell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (alteration original) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). The R&R found Plaintiff did not adequately plead a retaliation claim because Plaintiff never actually engaged in a constitutionally protected activity and therefore did not satisfy the first element of the claim.[3] (Doc. 44 at 29). Neither party objects to this portion of the R&R. The R&R went on, however, to recommend not dismissing the count because it found that Plaintiff had made out an interference with petition for redress claim. (*Id.*).

---

[3] Although not addressed by the R&R, Plaintiff may have also had trouble with the second element, as there is some support for the proposition that verbal threats alone do not constitute an action adverse enough to deter a person of ordinary firmness from exercising his constitutional rights. *See Chruby v. Kowaleski*, 2012 WL 12875987, at *12 (W.D. Pa. 2012) (collecting cases).

Defendants object to this finding on the basis that, in order to state a claim for interference with access to the courts, Plaintiff must show an actual injury in the form of a nonfrivolous, arguable claim that he lost. (Doc. 46 at 6-7). Defendants assert that Plaintiff has not done this. (*Id.*). Plaintiff, for his part, argues the R&R was correct, but does not specifically address Defendants' argument about the shortcomings of the access to the courts claim. (Doc. 47 at 9-10).

"Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights. Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts . . . ." *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (internal citations omitted). "[I]n order to press a claim for interference with the right to court access, a prisoner plaintiff must allege that he or she has been actually injured in his or her access to the courts, i.e., that he or she has been hindered in an effort to pursue a nonfrivolous legal claim." *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006) (citing *Lewis v. Casey*, 518 U.S. 343, 349-53, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)). The claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement. *Lewis*, 518 U.S. at 355 (finding "[i]mpairment of any other litigating capacity is simply one of the incidental . . . consequences of conviction and incarceration."). A plaintiff "must identify a nonfrivolous, arguable underlying claim" in order to pursue an access to courts claim, and "that underlying cause of action, whether

6

anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). An "actual injury" does not occur without a showing that a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented. *Lewis*, 518 U.S. at 354-56.

Here, Plaintiff does not object to the R&R's finding that he has not sufficiently pleaded a First Amendment retaliation claim and this Court sees no clear error in that finding. Thus, the Court analyzes the R&R's finding that there is a sufficiently pleaded petitioning for redress claim. As outlined above, this claim is cognizable as infringing on a prisoner's access to the courts. With that in mind, Defendants are correct that Plaintiff has failed to plead sufficient facts to show that an underlying claim was lost. Indeed, the remainder of Plaintiff's lawsuit seems to attest to the fact that he was not prevented from bringing the underlying claims into the courts. If anything, the threats resulted in the delay of his claim, but not the loss of his claim. Thus, as Plaintiff has failed to plead any actual injury to satisfy the pleading requirements of an access to the courts claim, this Court will sustain Defendants' Objection and dismiss Count VIII.

## C. Count IX

Next, Defendants contend that the R&R should have recommended dismissing Count IX instead of "transform[ing] the equal protection claim into a sufficiently pled class of one claim." (Doc. 46 at 7). They also fault the R&R for failing to respond to their argument

7

that "declining to discipline Zong and providing inadequate training" does not state a

Fourteenth Amendment claim. *Id.* at 8. As to Defendants' first argument, the Court does

not see how the R&R "transformed" anything. Plaintiff alleges that he was treated differently

than similarly situated prisoner-victims of sexual assault and, that in treating him differently,

Defendants violated the Fourteenth Amendment. The R&R correctly pointed out that the

Supreme Court has "recognized successful equal protection claims brought by a 'class of

one,' where the plaintiff alleges that she has been intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in treatment."

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060

(2000). Defendants cite no case law to the contrary. Because Plaintiff has pleaded Count

IX as a violation of equal protection, and because there is an equal protection legal theory

that would, if Plaintiff proves the facts alleged in his Complaint, entitle Plaintiff to recovery,

Count IX is not subject to dismissal for failure to state a claim.

As to Defendants' second argument, Defendants seem to be referring to a single

sentence in their Motion to Dismiss, without any citation to authority, to which the R&R did

not respond: "Moreover, declining to discipline Zong or inadequate training in general fail

[sic] to state an equal protection claim." (Doc. 13 at 10). It is not immediately apparent to

the Court that Defendants' statement is correct as a matter of law. Thus, as Defendants did

not see fit to adequately brief this argument in their Motion to Dismiss, the Court sees no

need to address the objection in-depth here.

## D. Counts III, V, VI, and VII

Defendants finally object that the R&R did not address their arguments for dismissal of Counts III, V, VI, and VII. Defendants are correct that the R&R did not address these arguments. Therefore, this Court will address those arguments here.

### 1. Count III

Count III of the Complaint is titled "Violation of Fourth Amendment by Invasion of Privacy," and alleged several Defendants "engaged in wagering through a pool or lottery in which they publicized and speculated about Zong's sexual abuse of plaintiff. They also publicly discussed and speculated about what Zong was doing to plaintiff. They communicated about these matters to a wide audience through email, text, and social media." (Doc. 1 at 51-52). Defendants put forth two arguments as to why Count III should be dismissed: (1) it fails to allege sufficient facts about what social media was alleged to have been used and the dates in which it occurred, and (2) the allegations do not amount to a search or seizure. (Doc. 13 at 6-7).

The R&R adequately responds to Defendants' first argument, albeit in a different context. (Doc. 44 at 10-11). Turning to the second argument, Defendants are correct that the allegations in Count III do not create a Fourth Amendment violation. Nevertheless, Plaintiff has adequately pleaded a Fourteenth Amendment invasion of privacy claim.

"The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists."

9

*C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). "The Supreme Court has, however, found certain 'zones of privacy' in the amendments to the Constitution." *Id.* These zones of privacy have provided the basis for two privacy interests protected under the Fourteenth Amendment. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011). "The first privacy interest is the 'individual interest in avoiding disclosure of personal matters,' and the second is the 'interest in independence in making certain kinds of important decisions.'" *Id.* (quoting *C.N.,* 430 F.3d at 178). It is the former of these two interests that is relevant here. "'[T]he right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable [right] whose constitutional significance we have recognized in the past.'" *C.N.,* 430 F.3d at 179 (alterations original) (quoting *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999)). This right to privacy, however, is not absolute and can be overcome by a government interest in disclosure that is "genuine, legitimate and compelling." *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000).

In the Third Circuit, the key question is whether the disclosed information "is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *C.N.,* 430 F.3d at 179 (quoting *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112 (3d Cir. 1987)). Here, Plaintiff has adequately pleaded that certain Defendants disclosed information about Defendant Zong's sexual abuse of Plaintiff. A person's identity as a victim of a sexual assault or rape is of a sufficiently personal nature as to be entitled to

10

a privacy interest. *See Doe 1 v. Cnty. of Fayette*, 2014 WL 5493814, at *3 (W.D. Pa. 2014) (holding that a minor had a privacy interest in "her identity and the allegation that she is a victim of sexual abuse"). Thus, Plaintiff has a constitutionally recognized privacy interest in his identity as a victim of sexual abuse and rape.

The mere fact that Plaintiff mistakenly pleaded Count III as a violation of the Fourth Amendment and not as a violation of the Fourteenth Amendment does not require dismissal. Plaintiff correctly identifies that he is suing Defendants for violations of his right to privacy under the Constitution and adequately pleaded sufficient information to state a claim. To dismiss the count so that Plaintiff could amend a single word in the heading of Count III would be an exercise in promoting form over function. Thus, the Court will deny Defendants' Motion to Dismiss as to Count III.

### 2. Count V

In Count V, Plaintiff alleges that several Defendants knew of, but failed to intervene in, the sexual abuse that Defendant Zong was inflicting upon Plaintiff. (Doc. 1 at 53). Thus, Plaintiff seeks to hold them liable for failing to intervene in the conduct that gave rise to the Eighth Amendment violation, Count I, and the Fourth Amendment violation, Count IV. Defendants concede that the failure to intervene is adequately pleaded as to the Eighth Amendment violation, but argue that "the allegations do not constitute a search or seizure." (Doc. 13 at 7). Plaintiff, however, adequately pleaded that Defendant Zong engaged in unreasonable searches of Plaintiff. (Doc. 1, ¶¶ 55, 56). Plaintiff describes in detail about

how Defendant Zong groped and squeezed Plaintiff's genitals during pat downs. (*Id.*).

These allegations form the basis of Plaintiff's Fourth Amendment Claim in Count IV.

Plaintiff also alleges that the Defendants named in Count V were aware of Defendant

Zong's abuses and did nothing. (*Id.* at 53). Thus, Defendants' argument that Plaintiff has

not alleged a Fourth Amendment violation is without merit and the Court will deny

Defendants' Motion to Dismiss as to Count V.

### 3. Count VI and VII

In Count VI and VII, Plaintiff alleges that various Defendants are liable for their failure

to train and supervise other Defendants. (Doc. 1 at 54-56). Defendants concede that the

Complaint adequately alleges a claim against Defendants Harpster and Rogers in Count IV,

but otherwise argue that Plaintiff has failed to identify any specific policy that created the

unreasonable risk of injury. (Doc. 13 at 8).

"[A] plaintiff can hold a supervisor liable for failure to train or supervise if the

supervisor has exhibited deliberate indifference to the plight of the person deprived."

*Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Carter v.

City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)); *see also Laurensau v. Romarowics*,

528 F. App'x 136, 140 n.2 (3d Cir. 2013) ("A supervisor can be held individually liable if his

failure to properly train or supervise a subordinate caused a deprivation of the plaintiff's

constitutional rights."). "To hold a supervisor liable for deliberate indifference, the plaintiff

must establish that: (1) existing policy or practice creates an unreasonable risk of

12

constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring*, 558 F. Supp. 2d at 547 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). "Where the § 1983 claim is premised upon the defendant's alleged failure to properly train his or her subordinates, the plaintiff 'must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Hayes v. Erie Cnty. Office of Children & Youth*, 497 F. Supp. 2d 684, 697-98 (W.D. Pa. 2007) (quoting *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)) *amended by* 497 F. Supp. 2d 709 (W.D. Pa. 2007). The Court will address the Count VI failure to supervise claim first.

Plaintiff adequately alleges that Defendants Lamas, Glunt, and Garman were aware of lax security policies, that those security policies had led to incidences of rape in the past that Lamas, Glunt, and Garman were aware of, that Lamas, Glunt, and Garman did nothing to remedy the security issues, and that Defendant Zong took advantage of the lack security procedures to rape Plaintiff in the same location as the prior rapes. (Doc. 1, ¶¶ 71, 76, 77, 79, 92, 96, 98). At this early stage, this is sufficient to allege a claim for deliberate indifference. Thus, the Motion to Dismiss is denied as to Count VI for these Defendants.

As to Defendants Ferguson and Salamon, both employees of the State Correctional Institution at Benner, Count V should be dismissed. As discussed above, Plaintiff has

brought his failure to supervise claim under the Fourth and Eighth Amendments. The only

Fourth and Eighth Amendment claims left are Count I, an Eighth Amendment sexual assault

claim, Count IV, a Fourth Amendment unreasonable search and seizure claim, and Count V

a failure to intervene claim predicated on Count I and IV.[4] Both Counts I and IV name a

single Defendant, Defendant Zong. Count V names a number of Department of Corrections

employees who were employed at the State Correctional Institution at Rockview, the

location of the alleged sexual assaults and rape. Claims against all other named

Defendants are brought under the First and Fourteenth Amendments. Thus, liability under a

failure to supervise theory can only be predicated on the failure leading to the Fourth and/or

Eighth Amendment violation. The only Fourth and Eighth Amendment violations Plaintiff

has pleaded involve the sexual assaults and the failure of various Department of

Corrections employees at Rockview to intervene in the sexual assaults. Counts I, IV, and V

do not involve the aftermath of the sexual assault. Therefore, Defendants who only became

involved after the sexual assaults had ended cannot be liable under a failure to supervise

theory. As a result, the Court will dismiss Count VI as it pertains to Defendants Ferguson

and Salamon because they are only alleged to have become involved in this case after the

sexual assaults ended and Plaintiff was transferred to Benner.

Turning to Count VII, a failure to train claim, Plaintiff alleges that several Defendants

failed to provide adequate training which in turn lead to the Fourth and Eighth Amendment

---

[4] As discussed above, Count II is dismissed, and Count III is labeled as a Fourth Amendment claim but is actually a Fourteenth Amendment claim.

violations.  Defendants' sole argument for dismissal is that Plaintiff is impermissibly trying to

bring a *Monell* claim against the Defendants named in Count VII, despite the fact that they

are not governmental entities.  (Doc. 13 at 8).  Defendants' argument, however, is without

merit because a failure to train theory of liability does not need to proceed under *Monell*.  As

discussed above, an individual can also be held liable for failure to train.  *See Laurensau*,

528 F. App'x at 140 n.2.  Notwithstanding, Defendant Salamon cannot be held liable for

failure to train for the same reasons she cannot be held liable for failure to supervise.  Thus,

the Court will dismiss Count VII insofar as it pertains to Salamon.

### III. CONCLUSION

For the reasons stated above, the Court will adopt Magistrate Judge Carlson's

Report and Recommendation in part, (Doc. 44), as modified by this Opinion, and grant in

part and deny in part Defendants Motion to Dismiss.  A separate Order follows.

Robert D. Mariani
United States District Judge