## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| B.L., | : | Civil No. 3:15-CV-1327 |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| v. | : | |
| | : | |
| **REBECCA AMBER ZONG, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

### I.    Factual Background

This case comes before us for consideration of a motion filed by the plaintiff,

B.L., for leave of court to continue to proceed under a pseudonym in this litigation.

(Doc. 53.) On July 30, 2015, the plaintiff, a state inmate acting through counsel, filed

this civil complaint under the pseudonym, B.L., against an array of correctional

defendants. (Doc. 1.) The well-pleaded facts set forth in the complaint described in

great detail a pattern of alleged sexual predation committed by a female Correctional

Officer, Amber Zong, targeting the plaintiff. Thus, B.L. alleges that Zong, acting

under color of law, coerced the plaintiff to engage in involuntary sex acts while

incarcerated. (Id.) These allegations are described at great length in the complaint,

and it appears that Zong was criminally prosecuted and fired as a result of these acts.

<u>Commonwealth v. Zong</u>, CP-14-CR-0002168-2014.[1]

B.L.'s complaint provides an extensive and graphic factual narrative describing a progressive pattern of sexual predation which he alleges he was subjected to by defendant Zong, beginning in the Fall of 2013. (<u>Id.</u>, ¶¶25-74.)  According to B.L. this conduct began with inappropriate comments, and then over time escalated to demands that B.L. engage in sexually explicit activity, up to and including sexual intercourse. (<u>Id.</u>)  B.L. alleges that the conduct was coerced and involuntary on his part, and that Zong compelled him to engage in this sexual activity by threatening to falsely report sexual misconduct on his part.  (<u>Id.</u>)  B.L. also specifically avers that this sexual conduct violated the tenets of his Roman Catholic faith, and insists that he raised these faith-based objections repeatedly to Zong, who nonetheless used her position as a correctional officer to cajole, threaten and coerce him to engage in these acts, knowing them to be contrary to his religious beliefs.  (<u>Id.</u>)  B.L. alleges that he was also required to engage in this sexually explicit conduct in a variety of venues inside the prison, including the prison chapel.  (<u>Id.</u>)  Further, according to B.L., Zong deterred him from exercising his right to report abuse by threatening to make false

---

[1]Consequently the Commonwealth is not representing Zong in this case, and she has been proceeding *pro se* in the litigation.  The remaining 17 correctional defendants are represented by counsel for the Pennsylvania Department of Corrections.

reports to prison officials regarding his sexual conduct as disciplinary matters.  (<u>Id</u>.)

While these specific allegations form the gravamen of the claims against defendant Zong, B.L. also named an array of additional correctional defendants, and makes specific allegations of misconduct against these officials.  Thus, B.L. alleges that numerous correctional supervisors and co-workers were specifically aware of Zong's sexual misconduct towards B.L., but took no steps to curtail that conduct, or intervene.  (<u>Id</u>., ¶¶80-89.)  Instead, B.L. alleges that prison officials allowed the conduct to persist, and in some instances actually exchanged visual depictions of this conduct through cell phones or social media, engaging in voyeurism instead of responding to the conduct.  (<u>Id</u>.)  Indeed, B.L. specifically alleges that a number of correctional defendants indulged in a lottery speculating on the frequency of this activity, and gambling on its duration before it was detected.  (<u>Id</u>.)

The defendants initially moved to dismiss this complaint, arguing in part that the complaint should be dismissed due to B.L.'s failure to comply with Rule 10 of the Federal Rules of Civil Procedure which generally provides that:  "[t]he title of the complaint must name all the parties. . . ."  Fed. R. Civ. P. 10.  We recommended that the court deny the motion to dismiss on these grounds, but direct the plaintiff to comply with the procedure mandated by Rule 10, and seek leave of court before proceeding under a pseudonym.  The district court adopted this recommendation, and

the plaintiff subsequently moved to proceed under a pseudonym.  (Doc. 53.)  This

motion is now fully briefed by the parties, (Docs. 54, , 60 and 68.), and is, therefore,

ripe for resolution.

For the reasons set forth below, the motion to proceed under a pseudonym is

denied.

## II.    Discussion

As a general matter Rule 10 of the Federal Rules of Civil Procedure provides

that: "[t]he title of the complaint must name all the parties . . . ."  Fed. R. Civ. P. 10.

Rule 10 embodies a principle which is central to our system of justice, a presumption

in favor of transparency.  As the United States Court of Appeals for the Third Circuit

has aptly observed:

> "[O]ne of the essential qualities of a Court of Justice [is] that its
> proceedings should be public." Daubney v. Cooper, 109 Eng. Rep. 438,
> 441 (K.B. 1829); Nixon v. Warner Cmmc'ns, Inc., 435 U.S. 589,
> 598–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).  Rule 10(a) requires
> parties to a lawsuit to identify themselves in their respective pleadings.
> Fed.R.Civ.P. 10(a); Doe v. Frank, 951 F.2d 320, 322 (11th Cir.1992).
> Courts have explained that Federal Rule of Civil Procedure 10(a)
> illustrates "the principle that judicial proceedings, civil as well as
> criminal, are to be conducted in public."  Doe v. Blue Cross & Blue
> Shield United, 112 F.3d 869, 872 (7th Cir.1997).  "Identifying the
> parties to the proceeding is an important dimension of publicness.  The
> people have a right to know who is using their courts." Blue Cross, 112
> F.3d at 872; Fed.R.Civ.P. 10(a).  And, defendants have a right to
> confront their accusers.  See S. Methodist Univ. Ass'n of Women Law
> Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir.1979).  A

plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings." Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir.2000).

Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011).

Consistent with these guiding principles, decisions regarding whether to allow a party to proceed under a pseudonym are consigned to the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Doe v. Megless, 654 F.3d 404, 407 (3d Cir. 2011). The exercise of this discretion is guided, however, by certain basic principles. At the outset,"[O]ne of the essential qualities of a Court of Justice [is] that its proceedings should be public." Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011). " A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access to judicial proceedings.' " Id. Nonetheless, "in exceptional cases courts have allowed a party to proceed anonymously." Id.

In exercising this discretion, we are cautioned to balance an array of competing factors:

The factors in favor of anonymity include[]:

"(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome

5

adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives."

On the other side of the scale, factors disfavoring anonymity include[]:

"(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated."

Doe v. Megless, 654 F.3d 404, 409 (3d Cir. 2011).

In striking this balance " '[e]xamples of areas where courts have allowed pseudonyms include cases involving 'abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality.' Doe v. Borough of Morrisville, 130 F.R.D. 612, 614 (E.D.Pa.1990)." Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011)(emphasis added).  The rationale behind these cases, which have on occasion carved out a narrow exception to this general rule of transparency and allowed some plaintiffs raising allegations of a sexual nature to proceed under a pseudonym, has been that use of a pseudonym may be proper when "prosecution of the suit compelled plaintiffs to disclose information 'of the utmost intimacy[.]' "  Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. 1981).  Thus, a determination regarding whether " [a] plaintiff's use of a pseudonym 'runs afoul of

6

the public's common law right of access to judicial proceedings,' " <u>Doe v. Megless</u>, 654 F.3d 404, 409 (3d Cir. 2011), or constitutes one of those "exceptional cases [where] courts have allowed a party to proceed anonymously," <u>id.</u>, is often informed by the question of whether the plaintiff has treated the conduct at issue as a matter of "the utmost intimacy." <u>Doe v. Stegall</u>, 653 F.2d 180, 185 (5th Cir. 1981).

Despite the general presumption favoring transparency of proceedings, B.L. seeks leave to proceed under a pseudonym, arguing that disclosure of his true identity would harm him and expose him to ridicule and harassment in prison. Further, B.L. argues that there are no countervailing societal interests at play in this case which would favor disclosure of this information.

On the unique facts of this case, we disagree. We are, of course, sensitive to the need for some measure of confidentiality on matters of a most personal and intimate nature, and have in fact granted requests to proceed under a pseudonym where a plaintiff has shown that certain medical information is of an extremely intimate nature. <u>See</u> <u>Jones v. OSS Orthopaedic Hosp.</u>, No. 1:16-CV-1258, 2016 WL 3683422, at *1 (M.D. Pa. July 12, 2016). However, in this case we find that B.L. has not made the showing necessary to overcome the strong presumption in favor of transparency and justify proceeding anonymously in this lawsuit.

To be sure, the case involves allegations of a sexual nature, a field where courts have in the past shown some solicitude to parties' privacy. We also recognize that for B.L. disclosure of his sexual contacts with correctional staff could potentially expose him to some ridicule and harassment. These concerns, however, are largely undermined in this case for at least two reasons. First, it seems undisputed that B.L.'s identity was publicly disclosed in court filings in the course of the criminal prosecution of defendant Zong. <u>Commonwealth v. Zong</u>, CP-14-CR-0002168-2014. Thus, the prior disclosure of this information minimizes the need for absolute anonymity.

More fundamentally, we are constrained to observe that the record before this court, which includes documents reflecting statements made by, and attributed to B.L., shows that B.L. did not treat these sexual encounters as a matter of utmost intimacy, as he would be expected to do if he sought anonymity. Quite the contrary, B.L. allegedly disclosed details of these sexual encounters to others, reported that he is a "celebrity," as a result of his sexual encounters in prison, and is alleged to have related with apparent pride a profane nickname he received describing his sexual prowess in prison. (Doc. 32.) Since B.L. himself seems to have engaged in crude sexual braggadocio regarding this matter we cannot find that he has treated this

incident as the type of matter of "utmost intimacy" which warrants proceeding under a pseudonym.

We also disagree with B.L.'s contention that there are no countervailing public interests which favor transparency. Quite the contrary, B.L.'s decision to bring these claims in federal court presents issues of paramount public interest and importance relating both to the conduct of public officials, and institutional safety in state prisons. These important public interests mitigate in favor of full disclosure and transparency. Furthermore, there is something inappropriately asymmetrical about litigation that allows one party, acting anonymously, to name eighteen individuals as defendants and then accuse those eighteen persons of grave misconduct while the accuser's identity remains shrouded in secrecy.

Taking all of these considerations into account we find that B.L. has not overcome the strong presumption against allowing parties to use a pseudonym and shown that this is an exceptional case where the court should allow a party to proceed anonymously. Therefore, the motion to proceed anonymously (Doc. 53.) will be denied.

An appropriate order follows.

### III.   <u>Order</u>

Accordingly, for the foregoing reasons, the plaintiff's motion to proceed under

a pseudonym (Doc. 53.) , is DENIED.

So ordered this 17th day of March, 2017.


<u>***S/Martin C. Carlson***</u>
Martin C. Carlson
United States Magistrate Judge