# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN LANDAU,** | : | Civil No. 3:15-CV-1327 |
| | : | |
| | : | **(Judge Mariani)** |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| | : | |
| **REBECCA AMBER ZONG, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

### I. Factual Background

This is a §1983 civil rights action brought by Brian Landau, a state inmate, against some 20 correctional defendants, arising out of allegations by Landau that he was sexually harassed and abused by a female correctional officer at SCI Rockview, Defendant Rebecca Zong, in 2013 and 2014, and other correctional staff failed to intervene and protect Landau from this conduct. The parties are engaging in what has been a halting, and often contentious, course of discovery, frequently marked by disputes that counsel could seemingly resolve with a modicum of mutual accommodation but which have instead been placed before the

court for resolution.[1] While we commend to all parties the value of mutually cooperative discovery we stand ready to assist them in resolving their current discovery disputes, which include a motion to compel filed by the plaintiff which seeks further supplementation of responses to two subpoenas duces tecum served on Superintendent Garman, at SCI Rockview. (Doc.118.)

The first of these subpoenas, issued on July 17, 2017, called for the production of staff daily rosters for certain dates in 2013 and 2014; print-outs of emails between and among twelve different correctional staff from November 2013 through July 2014; and copies of email retention policies. (Doc. 119-2.) The second subpoena duces tecum, dated September 30, 2017, called for production of certain pat search logs and punch-in records for time check points at the prison for various dates in 2013 and 2014. (Doc. 119-5.)

Superintendent Garman has responded to these subpoenas, but in some instances has indicated that certain records, such as punch-in reports and emails

---

[1] For example, we have been asked to determine the location of depositions of certain inmate witnesses, even though it was apparent from the parties' pleadings that all parties agreed that the depositions should take place at the institutions where the inmate are currently confined. Likewise on November 13, 2017 the plaintiff filed a motion to compel the scheduling of certain depositions, even though the date of the filing of this motion, November 13, was also the date that defense counsel initially offered for scheduling these depositions, and the motion's briefing schedule took us far beyond the November 13 date proposed by defense counsel, leading to the curious result that the parties actually delayed scheduling of these depositions for nearly a month in order to litigate the scheduling of these depositions.

sent by Defendant Zong, who was terminated as a state prison employee in 2014, no longer exist. In other instances, Garman has produced emails but not released the attachments to those emails, although Garman through Department of Corrections counsel has represented that they have offered to provide plaintiff's counsel with a mutually convenient opportunity to review these email attachments. Finally, Superintendent Garman has objected to the disclosure of pat search records from throughout the prison, arguing that only pat search records relating to physical contact between Landau and Zong have relevance to the issues in this lawsuit.

For the reasons set forth below, while we find that these responses are generally adequate and fully responsive to the requests made in the subpoenas, we will direct some further clarification and supplementation of those responses, as set forth below.

**II.   Discussion**

Several basic guiding principles inform our resolution of the instant motion to compel, which relates to compliance with subpoenas duces tecum. At the outset, "[r]ule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed.R.Civ.P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed.R.Civ.P. 26(b)(1).' OMS Invs., Inc. v. Lebanon

Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)." First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). Thus, contrary, to plaintiff's assertion, concepts of relevance do define the scope of a subpoena response.

Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding whether to enforce compliance with subpoenas, where " '[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court.' Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D.Pa. Apr.7, 2008) (quoting Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir.1983))." Coleman-Hill v. Governor Mifflin School Dist,. 271 F.R.D. 549, 552 (E.D.Pa. 2010).

Another immutable rule defines the court's discretion when ruling on motions to compel discovery. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of

4

evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

With these legal guideposts in mind, we turn to consideration of the instant discovery dispute which divides these parties.

At the outset, we note that with respect to at least two categories of information sought by Landau through these subpoenas—emails from and between Defendant Zong and 11 other corrections employees as well as punch-in checks point records from 2013 and 2014—Landau has been told that these materials do not exist. While this report has inspired follow-up questions by Landau, there was nothing inappropriate about the initial response to these subpoenas which noted that certain records no longer existed. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009). Moreover, the use of a subpoena duces tecum may be an inefficient vehicle for posing follow up questions concerning non-existent documents. Thus, there is some great force to the suggestion that these follow up questions are more appropriately posed through a

deposition rather than some awkward process of document subpoenas, replies, disputes, disagreements, and motions to compel.

Nonetheless, Landau poses two additional questions, which in the exercise of our discretion we will direct the subpoenaed party to attempt to answer. First, Landau requests confirmation that the search for these records included not only electronic copies of any records, but also a reasonable search for any existing paper copies. In addition, with respect to those records which no longer exist Landau has requested confirmation, if known, regarding when these records were discarded. In the exercise of our discretion, we will direct that supplemental answers be provided on these two scores to Landau.

As for the question of access to email attachments, we agree with Landau that such attachments should be considered components of the emails themselves. See In re Denture Cream Products Liab. Litig., 292 F.R.D. 120, 125 (D.D.C. 2013) (collecting cases); Cohen v. Trump, 13-CV-2519-GPC WVG, 2015 WL 3617124, at *19 (S.D. Cal. June 9, 2015) (same); Andy Hoang Nguyen v. Roth & Rau AG, CCB-06-1290, 2009 WL 10682036, at *2 (D. Md. July 28, 2009) (same). We note, however, that defense counsel has apparently extended what we regard as a reasonable offer to plaintiff's counsel to view these attachments, stating that: "Attempting to moot this issue, Undersigned offered Plaintiff's Counsel to view the attachments on his computer. Plaintiff's Counsel insisted on doing so the next day

or having Undersigned burn onto a disc and mail overnight. The next day was not convenient for DOC Defense Counsel due to other obligations. Plaintiff's Counsel was offered to pick any time the following week. She declined to do so, opting instead for filing the present motion." (Doc. 125, p. 5.) We regard this as a practical, reasonable alternative given some of the technological issues reported by counsel, and will direct the parties to agree upon a mutually convenient date, time and place for this review to occur. Any disputes regarding the relevance of particular attachments may then be addressed by the court following the completion of this review.

Finally, with respect to Landau's request for access to all pat search logs from throughout the prison on several given dates in January of 2014, we agree with corrections counsel that this request, while temporally limited, is overly broad in its scope, when the crucial issues relate to allegedly inappropriate physical contact between former Correctional Officer Zong and inmate Landau. Therefore, we will sustain this objection to the scope of the subpoena duces tecum.[2]

---

[2] Landau suggests that this overly broad sample of pat search records is necessary in some way to test the randomness of any search of the plaintiff by Zong, but Landau does not explain how this broader, but non-random sample of additional records would sustain any statistically valid randomness analysis. Moreover, the fact of sexual physical contact between Landau and Zong seems undisputed, making this randomness analysis only marginally relevant. However, broad disclosure of other inmate pat searches throughout the prison would involve disclosures of matters that would be invasive of the personal privacy of other searched inmates.

While these rulings resolve the underlying merits of the plaintiff's motion to compel, we note two other matters. First, the plaintiff has also sought an award of attorney's fees. Finding that Garman was substantially justified in many of the initial responses provided to Landau, we will decline this request. Second, the parties have addressed spoliation issues in their pleadings. Nothing in this ruling is intended to, or should be construed as, suggesting any view regarding spoliation claims or defenses. However, we encourage the parties to fully consider what conduct constitutes spoliation. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; *there has been actual suppression or withholding of evidence*; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). "In assessing a spoliation claim: '[R]elevant authority requires that four (4) factors be satisfied for the rule permitting an adverse inference instruction to apply: 1) the evidence in question must be within the party's control; 2) it must appear that there has been actual suppression or withholding of the evidence; 3) the evidence destroyed or withheld was relevant to claims or defenses; and 4) it was reasonably foreseeable that the evidence would later be discoverable.'" Victor v. Lawler, No. 3:08-CV-1374, 2011 WL 1884616, at *2–3 (M.D. Pa. May 18, 2011), on reconsideration, No. 3:08-CV-1374, 2011 WL 4753527 (M.D. Pa. Oct. 7, 2011).

In practice, spoliation litigation rarely turns on issues relating to the first two aspects of this four-part test. In most instances, and in this case, it is self-evident that: " [1] the evidence was in the party's control; [and] [2] the evidence is relevant to the claims or defenses in the case." Bull v. United Parcel Serv., Inc., 665 F.3d at 73. Rather, the critical issues in assessing whether spoliation inferences are proper typically revolve around the latter two aspects of this four-part test; namely, whether: "[3] there has been actual suppression or withholding of evidence; and, [4] the duty to preserve the evidence was reasonably foreseeable to the party." Id.

Turning first to the duty to preserve, the applicable benchmark in this regard is whether that duty was "reasonably foreseeable to the party." Id. "[T]he question of reasonable foreseeability is a 'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.' Micron Technology, Inc., 645 F.3d at 1320." Bull v. United Parcel Serv., Inc., 665 F.3d at 77-78. Thus, "[a] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. Baliotis v. McNeil, 870 F.Supp. 1285, 1290 (M.D. Pa.1994). Where evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.' This inference permits the jury to assume that 'the destroyed evidence would have been unfavorable to the position of the offending

9

party.' Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 78 (3d Cir.1994)." Howell v. Maytag, 168 F.R.D. 502, 505 (M.D.Pa. 1996).

However, a finding that a party had a duty to preserve evidence which was lost will not, by itself, warrant a finding of spoliation. The party seeking a spoliation finding must also prove a culpable state of mind. In this respect:

> For the [spoliation] rule to apply ... it must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. See generally* 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d Evidence § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").
>
> Brewer, 72 F.3d at 334 (emphasis added). Therefore, a finding of bad faith is pivotal to a spoliation determination. This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than—for instance—misplaced. *Withholding requires intent*.

Bull v. United Parcel Serv., Inc., 665 F.3d at 79 (emphasis added and in original).

In sum, any party seeking spoliation sanctions should do so by a separate motion but should be mindful of the exacting standards set by law for such motions. An appropriate order follows.

## III. Order

AND NOW, this 12th day of December, 2017, IT IS ORDERED that the plaintiff's motion to compel (Doc. 118) is GRANTED, in part, and DENIED in part, as follows:

1. IT IS ORDERED that on or before **January 5, 2018,** the subpoenaed party will confirm that the search for these records included not only electronic copies of any records, but also any existing paper copies and will produce any existing, responsive paper copies of such records.

2. In addition, with respect to those records which reportedly no longer exist on or before **January 5, 2018**, the subpoenaed party will confirm, if known, when these records were discarded.

3. With respect to attachments to previously produced e-mails, on or before **January 5, 2018**, the parties will agree upon a mutually convenient date, time and place for this review to occur. Any disputes regarding the relevance of particular attachments may then be addressed by the court following the completion of this review.

4. In all other respects, the motion is DENIED.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
