# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN LANDAU,** | : | **Civil No. 3:15-CV-1327** |
| | : | |
| | : | **(Judge Mariani)** |
| **Plaintiff** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **MARIROSA LAMAS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I.     <u>Factual Background</u>

This is a §1983 civil rights action brought by Brian Landau, a state inmate, against some 20 correctional defendants, arising out of allegations by Landau that he was sexually harassed and abused by a female correctional officer at SCI Rockview, Defendant Rebecca Zong, in 2013 and 2014, and other correctional staff failed to intervene and protect Landau from this conduct. The parties are engaging in what has been a halting, and often contentious, course of discovery. While we have commended to all parties the value of mutually cooperative discovery we have also reiterated that we stand ready to assist the parties in resolving their current discovery disputes, which include a series of motions to

compel filed by the plaintiff which seeks further supplementation of prior discovery responses. (Docs. 116 , 122.)

These motions to compel focus on the plaintiff's search for evidence to support his allegations that numerous correctional officers at SCI Rockview were aware of Zong's sexual contact with Landau but failed to intervene and protect Landau from this sexual harassment and abuse. To support these allegations Landau has sought information about the social media used by the defendants, and seeks access to that social media. While Landau has been informed at various times and with differing degrees of clarity that the information he seeks relating to staff awareness of sexual contact between himself and defendant Zong does not exist, Landau has persisted in efforts to search out information of this type, and the current motions to compel focus on this aspect of the plaintiff's claims.

Cast against this backdrop, there are two motions to compel pending for our consideration. First, Landau has moved to compel further responses to interrogatories and requests for production of documents served upon defendants Bumbarger, Cienfuegos and Rogers, three correctional officers at SCI Rockview. These three correctional defendants were deposed by plaintiff's counsel on June 6, 2017. In the course of these depositions, the three defendants acknowledged some social media access and use, but with a few exceptions that are not relevant to this motion denied discussing matters relating to the claims in this lawsuit in any social

media. (Docs. 138-1 through 4.) These defendant-deponents also for the most part denied the conduct, statements and activity attributed to them by Landau in his complaint. (Id.)[1] There is another aspect to these depositions which, in hindsight, foreshadows the current dispute between these parties regarding the scope of what is relevant in this litigation. On occasion, the questioning of these witnesses forayed into personal matters which seemed unrelated to the issues of whether these correctional officers knew that Landau was the victim of institutional sexual assault by Zong, and failed to protect him from such assaults.[2]

In the wake of these depositions, Landau issued interrogatories and requests for production of documents to Rogers, Cienfuegos and Bumbarger. These discovery demands were cast broadly in some respects. The interrogatories and requests for production sought an array of information concerning: cell phones, computers and other internet accessible devices possessed by the defendants;

[1] In their depositions, Cienfuegos and Rogers completely deny any prior knowledge of, or acquiescence in, the acts allegedly committed by Zong against Landau. In her deposition, Bumbarger also denies any prior knowledge or acquiescence in this conduct, but states that she perceived Zong to be unprofessionally familiar with inmates in the past, and confirms that Zong and Landau were together in the prison chapel on one occasion, providing some corroboration for the largely undisputed allegations that Zong and Landau met together in the prison chapel.

[2] For example, Landau's counsel questioned one witness regarding alleged family suicides, a sibling's criminal history, and whether the witness frequented prostitutes, eliciting answers which denied any family history of suicide or use of escort services but confirmed a sibling's imprisonment. (Doc. 138-2.) It is difficult to fathom how this information regarding the personal life of this correctional officer, which counsel may feel ethically obliged to share with her client, advances any reasoned understanding of the allegations in this lawsuit.

phone and internet services providers used by the defendants; as well as social media utilized by the defendants. These discovery demands also sought to have the defendants identify any social media postings or communications referenced in their depositions and communications made during the time period encompassed by the complaint, December 2013 through June 2014, as well as demanding that the witnesses identify and disclose all messages stored on electronic media "that mentions any of the other defendants for the time period from December 1, 2013 to the present." (Doc. 122-3,5,7,9,11 and 13.)

The defendants, in turn, responded to these interrogatories and requests for production of documents in a fashion which was consistent with their deposition testimony, identifying their internet and telephone service providers, describing the internet accessible devices they possessed; and detailing the forms of social media they used. The defendants also for the most part either denied having any social media communications in their possession from other defendants during the relevant time period or indicated that they did not currently possess and communications relating to the claims in this lawsuit.[3] (Docs. 122-2,4,6,8,10,12,14.)

---

[3] As we read these responses Cienfuegos and Rogers appear to deny possessing any communications, Bumbarger denies possessing any communications relevant to the claims in the lawsuit.

While these responses seemed largely congruent with the defendants' deposition testimony, Landau has filed a motion to compel further responses from the defendants. Although the precise tenor of the relief sought in this motion is not entirely clear, it appears that Landau is seeking an order which, *inter alia*, would compel the production of additional service provider data, something which the defendants do not appear to find objectionable. Landau also seems to be suggesting that he is entitled to wholesale disclosure of social media content by, between and among the defendants for at least a seven-month period from December 2013 to July 2014 and perhaps for as long as four years, from December 2013 to the present.

The second motion to compel focuses upon defendant Zong. While the discovery requests at issue in this motion are directed at Zong, Landau's counsel makes it unmistakably clear that the entire thrust of this discovery request is to develop information in support of the failure-to-protect claim Landau has lodged against other correctional staff. As Landau has put it: "No further discovery is needed to confirm the criminal misconduct imputed to Ms. Zong in the Amended Complaint. Am. Compl. ¶¶ 27-78, 272. The focus of the current discovery effort is to confirm that Ms. Zong's co-workers knew about that misconduct, condoned or enabled it, and derived amusement from it, as alleged." (Doc. 117, p. 3.) Landau's requests for production of documents have, therefore, requested copies of all

social media content by Zong during the relevant time period, December 2013 through June 2014, which related to the allegations in this case, or were sent or received by any other defendant in this lawsuit. (Doc. 116-5.) In addition, Landau has sought information from Zong which would enable plaintiff's counsel to subpoena phone and internet usage information for the relevant time period from Zong's internet and telephone service providers.

While there have been some delays in providing certain service provider information, Zong has not opposed Landau's efforts to secure this service provider information. Instead, Zong's counsel has lodged objections to requests for production which call for the wholesale disclosure of months of social media communications by Zong or untrammeled access to her cell phones. However, even as counsel has lodged these objections, Zong's attorney has endeavored to make disclosures and develop cooperative social media review procedures in this case. Thus, Zong has notified Landau's counsel that the only defendants she was in communication with during this relevant time period were Brandon Snyder and Matt Foster. Zong has agreed to cooperate in the release of service provider information from her telephone service provider so historic service records may be subpoenaed.. Moreover, through her counsel Zong has stated that: "as a reasonable accommodation, I am willing to provide my counsel with my password information and allow for you to read and print any pages that you deem pertinent

from my Facebook site so long as my attorney is present at a mutually convenient meeting that physically occurs at 919 University Drive – Suite 3 in State College, Pennsylvania." (Doc. 124, p. 3.)

Landau's counsel deems these measures inadequate, and now seeks an order compelling Zong to surrender her cell phones for forensic examination by the plaintiff's expert. Yet, even as Landau advances this claim, Landau supports the claim with a proffer of relevance which is astonishingly speculative, sweepingly expansive in its scope, and largely divorced from the actual claims in this lawsuit regarding whether other staff knew of Zong's sexual activity with Landau and failed to protect Landau. Indeed, Landau's proffer of relevance seems to specifically deny that he is now seeking information directly relating to whether Zong's cell phone would reveal third-party knowledge of this sexual contact with inmate Landau. Instead, as plaintiff's counsel now speculates that:

> In plaintiff's view, Zong likely transmitted images and messages that were intended to ingratiate herself with superiors, senior corrections officers, and the union representative at the prison. In this way, she sought to shield herself from the consequences of her sexual predation upon the plaintiff and other prisoners, if and when it came to light. The messages would function to normalize Zong's criminal conduct by positioning her as a source of sexual entertainment and amusement for her older colleagues and supervisors. The digital content that plaintiff expects to discover would be nothing like a to-do list for harassing the plaintiff or a chronicle of such events, as Zong's counsel implies. Rather, it would be more in the nature of self-portraiture: the artful invention of an attractive "brand" of tolerable sexual antics.

(Doc. 139, p.7.)

7

Thus, the proffer of relevance in this case offered by Landau has transmogrified from a legitimate pursuit of evidence supporting a claim that other staff knew of illicit sexual contact between Correctional Officer Zong and Landau into some sort of wide-ranging inquiry into issues of sexual "self portraiture: the artful invention of an attractive 'brand' of tolerable sexual antics."

With this understanding of what Landau now hopes to obtain through this extremely intrusive inquiry into social media, we will grant Landau's unopposed request for information that would allow him to subpoena basic service provider information, deny these motions to compel to the extent that they seek wholesale access to electronic social media, but prescribe a process for appropriately tailoring discovery in this field.

## II.   Discussion

### A.   Social Media Discovery—Guiding Principles

The general scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1) in the following terms:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin–Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). See Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *1 (M.D. Pa. Dec. 16, 2015). This broad discretion extends to discovery rulings by magistrate judges. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves

substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, when assessing discovery disputes we are enjoined that:

> Discovery need not be perfect, but discovery must be fair." Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 333 (E.D. Pa. 2012) (Baylson, J.). "The responses sought must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." Hicks v. Arthur, 159 F.R.D. 468, 470 (E.D. Pa. 1995). "[T]he scope of [ ] discovery is not without limits." Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996). As such, "[d]iscovery should be tailored to the issues involved in the particular case." Id.

Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017).

Further, in making these judgments:

> To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014) (Fischer, J.). In ascertaining which materials are discoverable and which are not, a district court must further distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," Bell v. Lockheed Martin Corp., 270 F.R.D. 186, 191 (D.N.J. 2010), and demands that are "overly broad and unduly burdensome." Miller v. Hygrade Food Products Corp., 89 F.Supp.2d 643, 657 (E.D. Pa. 2000).

Id.

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth.,

203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Another immutable rule defines the court's discretion when ruling on motions to compel discovery. It is clear that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D.Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D.Pa. April 9, 2009).

Discovery in federal court undeniably extends in appropriate cases to discovery of relevant social media content. However, such social media is not automatically subject to wide-ranging or wholesale discovery. Rather we have long recognized "that the scope of discovery into social media sites 'requires the application of basic discovery principles in a novel context,' and that the challenge

11

is to 'define appropriately broad limits ... on the discovery ability of social communications.' <u>EEOC v. Simply Storage Mgmt.</u>, No.1:09–cv–1223, 270 F.R.D. 430, 2010 WL 3446105, *3 (S.D.Ind. May 11, 2010). " <u>Offenback v. L.M. Bowman, Inc.</u>, No. 1:10-CV-1789, 2011 WL 2491371, at *3 (M.D. Pa. June 22, 2011). In framing the approach to social media discovery we must be mindful of the fact that social media is at once both ubiquitous and often intensely personal, with persons sharing through social media the most intimate of personal details on a host of matters, many of which may be entirely unrelated to issues in specific litigation.

Thus, as the plaintiff aptly notes, courts considering such social media discovery requests often impose an array of carefully tailored limitations on this discovery. Indeed:

> Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. <u>See John B. v. Goetz</u>, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. <u>Scotts Co. LLC v. Liberty Mut. Ins. Co.</u>, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007). In particular, a court must be cautious "where the request is overly broad in nature and where the connection between the party's claims and the [electronic device] is unproven."

A.M. Castle & Co. v. Byrne, 123 F. Supp. 3d 895, 900-01 (S.D. Tex. 2015) (collecting cases); see also Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Nemaha Brown Watershed Joint Dist. No. 7, 294 F.R.D. 610, 619 (D. Kan. 2013) (denying a request to inspect personally-owned devices of defendant's employees in part because "the Court [had] significant concerns regarding the intrusiveness of the request and the privacy rights of the individuals to be affected"). However, when the requesting party is able to demonstrate that "the responding party has failed in its obligation to search its records and produce the requested information," Midwest Feeders, Inc. v. Bank of Franklin, No. 5:14CV78, 2016 WL 3945676, at *2 (S.D. Miss. July 19, 2016), an inspection of the responding party's electronic devices may be appropriate. See, e.g., Kilpatrick v. Breg, Inc., No. 08-10052-CIV, 2009 WL 1764829, at *3 (S.D. Fla. June 22, 2009); Jacobson v. Starbucks Coffee Co., No. 05-1338, 2006 WL 3146349, at *6-7 (D. Kan. Oct. 31, 2006). Further, courts may be somewhat less wary of requests to inspect electronic devices when there is a substantiated connection between the device the requesting party seeks to inspect and the claims in the case, or, as one court put it, where the "contents of the [device] go to the heart of the case." Hedenburg v. Aramark Am. Food Servs., No. C06-5267, 2007 WL 162716, at *2 (W.D. Wash. Jan. 17, 2007); see Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp., 280 F.R.D. 681, 686 (S.D. Fla. 2012) (forensic search of responding party's information systems might reveal maintenance records and work orders that responding party appeared to have attempted to hide by shredding hard-copy records, and that might reveal critical facts concerning when the claimed damage to the responding party's property occurred); Townsend v. Ohio Dep't of Transp., 2012-Ohio-2945, ¶¶ 24-25, 2012 WL 2467047, at *7-8 (Ohio Ct. App. 10th Dist. June 28, 2012) (court permitted plaintiff to search defendant's email system for emails that two witnesses recalled exchanging but could not produce and that, if found, would prove notice to defendant of clogged drain that caused the flooding that resulted in plaintiff's injury); cf. Kickapoo Tribe, 294 F.R.D. at 618-19 (citing and distinguishing cases).


Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016).

These principles apply with particular force to wide-ranging inmate requests for social media information relating to correctional staff. Such requests must be approached with great caution, both to protect legitimate privacy interests and to avoid threats to institutional order, safety and security. See Moore v. Mann, No. 3:13-CV-2771, 2017 WL 1386215, at *1 (M.D. Pa. Apr. 18, 2017).

Guided by these principles we turn to a consideration of the social media discovery requests made in this case.

### B.  Resolution of the Motions to Compel.

In considering these motions to compel, we begin with an examination of the well-pleaded claims asserted by Landau, the proponent of this discovery. See Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 149 (M.D. Pa. 2017). Here, Landau has clearly stated that his motion to compel seeks evidence "to confirm that Ms. Zong's co-workers knew about [her sexual] misconduct, condoned or enabled it, and derived amusement from it, as alleged." (Doc. 117, p. 3.) Thus, the legal claim which we use as the principal yardstick for any relevance determination is an Eighth Amendment failure-to-protect claim. Proof of a culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. The leading case in the Third Circuit addressing deliberate indifference in this prison context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001).

In <u>Beers-Capitol,</u> the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

<u>Id.</u> at 125 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." <u>Id.</u>

This deliberate indifference standard "is a subjective standard under <u>Farmer</u> – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." <u>Id.</u> Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' <u>Hamilton v. Leavy</u>, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added). Accordingly, "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." <u>Davis v. Williams</u>, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in <u>Beers-Capitol</u>, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other

supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. However, mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005). Instead, as the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43 (emphasis added.)

Given these settled elements of an Eighth Amendment failure to protect claim, we find that the plaintiff's request for discovery into internet and telephone service provider information, which is unopposed, would facilitate some basic understanding of the degree of contact between the defendants on social media since it would permit the parties to subpoena historical telephone and internet usage records. This information, in turn, could be used to set a reasonable

framework for more narrowed and focused discovery, if necessary. Furthermore, since this initial disclosure would not reveal the content of communications it would be narrow, proportional, and not unduly invasive of personal privacy. Therefore, we will direct that the parties complete the cooperative process of making these disclosures on or before January 5, 2018.

However, to the extent that Landau now seeks wholesale disclosure of social media content, or demands that defendant Zong be compelled to surrender her cellphones for inspection by the plaintiff's expert, we will deny this request at the present time given the proffer of relevance made by Landau's counsel, which indicates that the plaintiff wishes to rummage through these social media for evidence of sexual "self portraiture: the artful invention of an attractive 'brand' of tolerable sexual antics." In our view, these more broadly cast discovery demands fail for at least four reasons.

First, these requests are far too speculative. Indeed, Landau's entire proffer of relevance is premised upon layers of sexual speculation regarding the activities and motives of correctional officials. Thus, Landau speculates that Zong has sent sexual content to numerous other prison staff; speculates that this conduct was done to ingratiate, distract and amuse co-workers; speculates that this activity was also designed to normalize sexual behavior; speculates that this conduct was part of a grand design to mask and conceal sexual abuse of the plaintiff ; and speculates

that this behavior will show some form of "self portraiture: the artful invention of an attractive 'brand' of tolerable sexual antics." Thus, the proffer of relevance made here piles speculation upon speculation in order to show the relevance of this discovery. Mindful that " '[m]ere suspicion' or speculation that an opposing party may be withholding discoverable information is insufficient to support an 'intrusive examination' of the opposing party's electronic devices or information systems[] Scotts Co. LLC v. Liberty Mut. Ins. Co., No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007)," Hespe v. City of Chicago, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016), we find the wholly speculative nature of this proffer insufficient to justify this particularly intrusive social media search at this time.

Second, we conclude that a sweeping scope of the discovery demand tailored by the plaintiff's proffer, which seeks to ferret out evidence of what Landau's counsel call sexual self-portraiture, is divorced from and not relevant to the claims set forth in this lawsuit. Whatever sexual self-portraiture may be, it often entails things that are far afield from the question of whether other correctional staff were aware of a threat to Landau's safety that was "*longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such

evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." <u>Farmer</u>, 511 U.S. at 842-43 (emphasis added.) Since Landau's demand, as justified by his proffer, is not reasonably calculated to lead to relevant evidence concerning the claims and defenses in this lawsuit, or the legal issues raised by those claims, these requests will be denied.

Third, the current scope of Landau's request, which would allow the plaintiff to indulge in some search of social media over a span of many months for evidence of sexual self-portraiture, would be overly broad, disproportionate, and particularly intrusive of personal privacy. As we have observed, numerous courts have also recognized this need to guard against undue intrusiveness and to be cautious in requiring the forensic inspection of electronic devices, or wholesale disclosure of social media, in order to protect privacy interests. <u>See John B. v. Goetz</u>, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for ... significant privacy and confidentiality concerns"). <u>Hespe v. City of Chicago</u>, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D. Ill. Dec. 15, 2016). Therefore, these privacy concerns, coupled with the overbreadth of the disclosure and the lack of proportionality in this discovery demand, are all considerations which all caution against granting this request.

Finally, allowing an inmate access to data concerning the sexual self-portraiture of prison staff, while speculative, irrelevant, overly broad and invasive of personal privacy, is also fraught with dangers for intuitional safety and security. This is yet another factor which compels denial of these motions at this time. See Moore v. Mann, No. 3:13-CV-2771, 2017 WL 1386215, at *1 (M.D. Pa. Apr. 18, 2017).

Yet, while we will deny these broadly framed requests at this time, we deny these motions without prejudice to renewal of more narrowly tailored and specific requests in the future. We also will direct that counsel for the plaintiff and defendant Zong conduct the limited, structured Facebook review which defendant Zong's counsel has agreed to undertake. We adopt this course because we recognize that Landau has made allegations of extraordinary gravity, and substantial evidence supports his assertions of improper sexual contact by defendant Zong. Given the gravity of these assertions, Landau should have a reasonable opportunity to determine the extent to which other correctional staff may have failed to protect him from this illicit contact. We also recognize that many of Landau's latest discovery demands have been inspired, in part, by a perceived ambiguity in some of the defendants' responses to prior discovery requests. Accordingly, in addition to directing that the parties complete the process of cooperative disclosure of information that will allow for discovery of internet

and telephone service provider information by January 5, 2018, we will instruct the defendants to engage in a three-step effort aimed at appropriate social and electronic media discovery by January 5, 2018 through a course of preservation, production and explanation.

First, with respect to preservation, the defendants should immediately take steps to preserve in a readable format all social media content by, between and among the defendants for the relevant time period, December 2013 through June 2014. In addition, the defendants must preserve any social media content that relates to the issues, claims defenses, and factual allegations made in this case regardless of when that social media content was created.

Second, counsel should review this existing preserved social media content and produce all relevant content that exists, or affirm that individual defendants have no such content, by January 5, 2018. If social media content exists but is withheld for any reason that fact should also be disclosed to the plaintiff's counsel.

Third, in overseeing this social media content preservation and production, defense counsel should also determine whether any media content has been deleted and ascertain the circumstances surrounding the deletion of this content, including dates of deletion if known, so that the plaintiff may obtain that information in discovery. Counsel and defendants should then be prepared to fully explain the

circumstances surrounding the deletion of any social media content in the course of depositions or other discovery.

Armed with this information the parties could then set a schedule for the completion of all depositions and the conclusion of discovery, a course of action in accord with the animating principles governing federal discovery rules which is that these rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

An appropriate order follows.

### III.   Order

AND NOW, this 15th day of December, 2017, in accordance with the accompanying memorandum opinion, IT IS ORDERED that the plaintiff's motions to compel, (Docs. 116 and 122) are GRANTED in part and DENIED in part as follows:

1.     The unopposed discovery request for internet and telephone service provider information of the defendants, is GRANTED and we direct that the parties complete the cooperative process of making these disclosures on or before **January 5, 2018**.

2.     To the extent that Landau now seeks wholesale disclosure of social media content, or demands that defendant Zong be compelled to surrender her

23

cellphones for inspection by the plaintiff's expert, this request is DENIED at the present time.

3. Counsel for the plaintiff and defendant Zong are ORDERED to conduct the Facebook review which defendant Zong's counsel has agreed to undertake on or before **January 5, 2018**.

4. The defendants should immediately take steps to preserve in a readable format and social media content by, between and among themselves for the relevant time period, December 2013 through June 2014. In addition, the defendants must preserve any social media content that relates to the issues, claims defenses, and factual allegations made in this case regardless of when that social media content was created.

5. Defense counsel should review this existing preserved social media content and produce all relevant content that exists, or affirm that individual defendants have no such content, by **January 5, 2018**. If social media content exists but is withheld for any reason that fact should also be disclosed to the plaintiff's counsel.

6. In overseeing this social media content preservation and production, defense counsel should determine whether any media content has been deleted and ascertain the circumstances surrounding the deletion of this content, including

dates of deletion is known, so that the plaintiff may obtain that information in discovery .

7. Armed with this information the parties should then meet and confer on or before **January 5, 2018**, to set a schedule for the completion of all depositions and the conclusion of discovery.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge