# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN LANDAU, | : |
| Plaintiff, | : |
| v. | : 3:15-CV-1327 |
| | : (JUDGE MARIANI) |
| MARIROSA LAMAS, et al., | : |
| Defendants. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Brian Landau, an inmate in Pennsylvania state prison, originally filed this action in July 2015 against twenty-one current and former Pennsylvania Department of Corrections ("DOC") employees and officials.[1] Landau asserts thirteen federal constitutional and state tort claims arising out of alleged incidents of sexual harassment and assault committed against Landau by Defendant Rebecca Zong, a former DOC corrections officer.[2]

---

[1] As stated in Landau's Amended Complaint filed on May 6, 2017 (Doc. 88), the twenty-one defendants are: Marirosa Lamas, Steven Glunt, Tammy Ferguson, Mark Garman, Bobbi Jo Salamon, Eric Tice, Lieutenant Hoover, Lieutenant Vance, Jack O. Evans, Michael Dooley, Joanne Gallo, Lieutenant Drew Young, Rebecca Amber Zong, Sergeant Mark Harpster, Sergeant Tommy Rogers, Corrections Officer Stacie Bumbarger, Corrections Officer Matthew Foster, Corrections Officer Lucas Nicholas, Corrections Officer Cienfuegos, Corrections Officer Brandon Snyder, and Corrections Officer Trainee Miller. Defendant Zong is represented by private counsel, while the remaining defendants ("DOC Defendants") are represented by DOC counsel.

[2] The surviving claims in this lawsuit are: Count I – Eighth Amendment claim (sexual assault) against Defendant Zong; Count II – Eighth Amendment claim (deliberate indifference) against all Defendants; Count III – Fourteenth Amendment claim (invasion of privacy) against Defendants Zong, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; Count IV – Fourth Amendment claim (unreasonable search and seizure) against Defendant Zong; Count V – Fourth and Eighth Amendment claims (failure to intervene) against Defendants Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller; Count VI – Fourth and Eighth Amendment claims (failure to supervise) against Defendants Lamas, Glunt, Ferguson, Harpster, Rogers, Garman, and Salamon; Count VII – Fourth and Eighth Amendment

1

(Doc. 88). Collectively, Defendants have filed three separate motions for summary judgment against Plaintiff, with each motion raising various arguments against the numerous claims in Plaintiff's Amended Complaint.[3] (Doc. 170, Doc. 174, Doc. 178). The first motion for summary judgment, joined in by all Defendants, urges the Court to grant summary judgment to Defendants with respect to all of Plaintiff's federal constitutional claims, except those claims related to Zong's conduct on May 14, 2014 in the SCI-Rockview chapel, on the grounds of failure to exhaust administrative remedies.[4] (Doc. 170, Doc. 171 at 7-8). In his Report and Recommendation (R&R) addressing the first motion for summary judgment, Magistrate Judge Carlson recommends denying the first motion for summary

---

claims (failure to train) against Defendants Garman, Salamon, Evans, Dooley, Gallo, and Young; Count IX – Fourteenth Amendment claim (equal protection) against Defendants Lamas, Glunt, Ferguson, Tice, Hoover, Vance, Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers; Count XII – sexual assault claim against Defendant Zong; Count XIII – sexual battery claim against Defendant Zong; Count XIV – intentional infliction of emotional distress ("IIED") claim against Defendants Zong, Glunt, Ferguson, Tice, Hoover, Vance, Harpster, Rogers, Salamon, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; Count XV – defamation claim against Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; and Count XVI – state law invasion of privacy claim against Defendants Zong, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller.

[3] The Court finds that permitting separate motions for summary judgment and accompanying briefs to be submitted piecemeal, as well as the ensuing separate objections and accompanying briefs regarding the R&Rs that were filed with respect to the separate motions for summary judgment, has presented an extraordinarily cumbersome, confusing, and laboriously segmented approach to this case that has resulted in an unnecessary and wasteful use of judicial resources. This is particularly true in light of the voluminous record in this case to which neither party made sufficient reference, which made resolution of the issues in this case that much more onerous. The Court places counsel on notice that this type of approach will not be allowed again in this case or any other case.

[4] Defendants refer to this exception as encompassing "1 claim" against Zong arising out of the May 14, 2014 incident but fail to specify for which of the four federal constitutional claims against Zong (Counts I, II, III, and IV) they are conceding Landau properly exhausted administrative remedies. (Doc. 171 at 7-8). Broadly construing the claims, Defendants' concession could apply to each of the federal constitutional claims against Zong relating to the May 14, 2014 incident. However, a nuanced parsing of these claims and Defendants' purported concession is unnecessary because the Court will adopt the R&R denying summary judgment for failure to exhaust administrative remedies with respect to all of the federal constitutional claims against all Defendants.

2

judgment because administrative remedies were not available to Landau due to the confusing and opaque grievance policies in place at the DOC with respect to complaints regarding sexual harassment and abuse. (Doc. 205). DOC Defendants have raised Objections to the R&R (Doc. 213) that have been briefed (Doc. 214, Doc. 216, Doc. 218). Zong did not file Objections to the R&R. By order dated July 9, 2019, the Court informed the parties that pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court would consider the issue of exhaustion of administrative remedies in its role as fact finder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013), and permitted the parties to supplement the record with any evidence relevant to the issue. (Doc. 222). Landau responded on July 23, 2019 with a supplement to the record. (Doc. 225). DOC Defendants filed a response to Plaintiff's supplement on July 31, 2019. (Doc. 226). Upon *de novo* review of the R&R and consideration of the record, the Court will overrule DOC Defendants' Objections and adopt the R&R in its entirety for the reasons set forth below. The Court will address factual disputes between the parties and between the parties and the R&R's Statement of the Facts and of the Case (Doc. 205 at 1-9) where relevant throughout this Memorandum Opinion.

## II. STANDARD OF REVIEW

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28

U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to de novo review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id.* at 100 (internal citations and quotation marks omitted).

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

4

S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. ANALYSIS

Defendants' first motion for summary judgment raises the affirmative defense of failure to exhaust administrative remedies. (Doc. 171 at 5-7). Defendants contend that Landau failed to file proper grievances under DOC's required grievance procedure, DC-ADM 804, and pursue those grievances through final appeal before commencing this suit in federal court. (*Id.*) Landau responds that Defendants fail to sustain the affirmative defense because no administrative remedy was available to him; DC-ADM 804 directs inmates to follow the grievance procedures in DC-ADM 008, which provides no remedies, when making complaints regarding sexual harassment or abuse. (Doc. 186 at 6-7).

In his R&R, Magistrate Judge Carlson agrees with Landau's characterization of the administrative remedial scheme for inmate complaints regarding sexual harassment or abuse as a deficient, practically unavailable pathway for reporting and resolving such complaints. In reaching this conclusion, the R&R examines both DC-ADM 804 and DC-ADM 008, both of which were undergoing revision around the time of the alleged

6

misconduct that is the subject of this lawsuit. Magistrate Judge Carlson finds "the shifting wording of DC-ADM 008 and DC-ADM 804 to be so opaque that the administrative remedy scheme with regard to these types of claims was 'practically speaking, incapable of use' in the fashion proposed by the defendants." (Doc. 205 at 21 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016)). Additionally, because DC-ADM 008 permits oral complaints to staff to report sexual harassment or abuse, Magistrate Judge Carlson finds granting summary judgment on the grounds of failure to exhaust inappropriate due to factual disputes regarding what Landau may have reported to staff and when he may have made such reports. (Doc. 205 at 22-23).

DOC Defendants object to the R&R. They argue that nothing in Landau's responses to discovery requests or his deposition testimony indicate that Landau was confused by the administrative grievance procedures or found them opaque, and so it was an error for the R&R to "find an excuse where none exists from Plaintiff's perspective as evidenced by the record." (Doc. 214 at 3-4). They also argue that nothing in the DC-ADM 804 grievance policy "precludes grieving failure to intervene, supervise or train claims" or invasion of privacy or equal protection claims. (*Id.* at 4). They further contend that any effort by Landau to report these types of claims under DC-ADM 008 is not supported by the factual record, asserting that Landau admitted he only complained about Zong's conduct and not that of the DOC Defendants. (*Id.* at 4-7).

Landau responds that DOC Defendants "miss[] the point" because it is the defendants' burden to present undisputed facts supporting the availability of administrative remedies and Landau's failure to exhaust them, and there is "genuine dispute as to the availability of any administrative remedy" to address Landau's claims. (Doc. 216 at 5-7, 12-13). He argues that his complaints to DOC employees and officials "are more extensive in scope" than DOC Defendants admit and that the DOC mischaracterized or incorrectly recorded his grievances, which were made by Landau with the level of specificity practicable to him as an inmate. (*Id.* at 8-11). DOC Defendants' reply to Landau's response covers the same ground as the Objections.

The Court agrees with Magistrate Judge Carlson's finding in the R&R that Defendants have not proven that Landau failed to exhaust administrative remedies regarding his federal constitutional claims because such remedies were not available to him. Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Landau's Section 1983 claims fall within the ambit of the PLRA. *See Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to § 1983 actions and to *Bivens* actions.").

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis*, 204 F.3d at 67 (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)). To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000).

"Failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)). "[E]xhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013). However, "some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion under *Small*." *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018) (finding that "a district court must—at a minimum—notify the parties that it will consider exhaustion in its role as a fact finder under *Small* before doing so" and also "must at least provide the parties with an opportunity to submit materials relevant to exhaustion that are not already before it").

Despite the PLRA's strict requirement for prisoner litigants to exhaust administrative remedies before filing an action in federal court, the R&R notes that the Supreme Court recognized in *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016), that "the PLRA contains its own, textual exception to mandatory exhaustion" because only "available" remedies need be exhausted. *Id.* Discussing the ordinary meaning of "available," the Supreme Court in *Ross* found that under the PLRA "an inmate is required to exhaust those, but only those,

grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Magistrate Judge Carlson correctly summarizes the three scenarios posited by the Supreme Court in *Ross* where administrative remedies are unavailable to an inmate:

> Specifically, the Supreme Court noted that administrative remedies are not available where: 1) the administrative procedure operates "as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60 (citing *Booth v. Churner*, 532 U.S. 731, 738, 741 n.6 (2001)). As to the second circumstance, the Supreme Court instructed that "[w]hen rules are so confusing that no reasonable prisoner can use them, then they are no longer available." *Ross*, 136 S. Ct. at 1860 (quotation omitted). The Supreme Court further noted that "Congress has determined that the inmate should err on the side of exhaustion" where "an administrative process is susceptible of multiple reasonable interpretations," however, where a remedy becomes "essentially 'unknowable'— so that no ordinary prisoner can make sense of what it demands — then it is also unavailable." *Id.*; *see also Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002) (holding that prisoner with failure to protect claim was entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); *Camp v. Case Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) (holding that exhaustion requirement was met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

(Doc. 205 at 15-16). Magistrate Judge Carlson focused on the second scenario, the opacity of DC-ADM 804 and DC-ADM 008, to find that administrative remedies were not capable of use by Landau to pursue grievances regarding sexual misconduct by Zong. (*Id.* at 19-21).

This finding is well-grounded. DC-ADM 804 is the standard grievance policy for inmates in DOC facilities and requires three levels of review before exhaustion. *Garcia v. Kimmell*, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) (citing *Spruill*, 372 F.3d at 232). However, the version of DC-ADM 804 in effect May 1, 2014, while the events of which Landau complains were still ongoing, specifically directs inmates and prison staff to use DC-ADM 008 as the appropriate grievance policy for complaints "regarding sexual abuse":

> 2. The Inmate Grievance System [DC-ADM 804] is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate. It is not meant to address incidents of an urgent or emergency nature ***including allegations of sexual abuse as defined in Department policy DC-ADM 008, "Prison Rape Elimination Act."*** When faced with an incident of an urgent or emergency nature, the inmate shall contact the nearest staff member for immediate assistance.
>
> . . .
>
> 6. A grievance regarding sexual abuse will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 008.** There are better ways in which a sexual abuse claim can be reported which is outlined in Department policy **DC-ADM 008.** If a grievance is filed regarding allegations of sexual abuse, while it will not be addressed through the Inmate Grievance System, the grievance will be immediately forwarded to the Security Office as well as the PREA Compliance Manager in accordance with Department policy **DC-ADM 008.** ***Grievances related to SIP Expulsion will be in accordance Section 2*** [sic] ***of this procedures manual.***

(Doc. 173-2 at 9-10 (emphasis in original)). Likewise, DC-ADM 008 also states that:

> [i]nmates shall not utilize the Grievance Procedure [DC-ADM 804] to report sexual abuse. If an inmate files a grievance related to sexual abuse, the Grievance Officer shall immediately forward this grievance to the Security Office for investigation. The inmate will be notified of this action. This will be considered an exhaustion of administrative remedies.

12

(Doc. 187-6 at 43). Despite this direction to inmates to use DC-ADM 008 when reporting allegations of sexual harassment or abuse, Magistrate Judge Carlson notes in the R&R that "DC-ADM 008, in turn, did not provide any real remedies for aggrieved inmates. It was simply an abuse reporting procedure." (Doc. 205 at 18). Crucially and remarkably, Defendants also affirmatively concede that "DC-ADM 008 does not provide any remedies." (Doc. 172 ¶ 21). And the Court's review of DC-ADM 008 further confirms that the policy is not "capable of use" to attain "some relief for the action complained of." *Ross*, 136 S. Ct. at 1858 (quoting *Booth*, 532 U.S. at 737-38) ("As we explained in *Booth*, the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"). DC-ADM 008 merely outlines the actions the DOC will take when investigating and responding to incidents related to sexual harassment or abuse. (*See* Doc. 187-6 at 42-48 (reporting procedures), 49-50 (investigation procedures for sexual harassment), 51-55 (response procedures)).[5] The unclear structure of the administrative remedial scheme here is similar to that of the Maryland state prison system questioned by the Supreme Court in *Ross*: overlapping and interacting grievance policies

---

[5] The R&R also convincingly explains that the previous versions of DC-ADM 804 and DC-ADM 008, to the extent they applied at all in this case, were similarly opaque and confusing. (Doc. 205 at 7-8). In particular, the previous version of DC-ADM 804 effective December 28, 2011 stated that "[a] grievance dealing with allegations of abuse shall be handled in accordance with Department policy **DC-ADM 001, "Inmate Abuse Allegation Monitoring Process"** *and/or DC-ADM 008, "Sexual Harassment of or Sexual Contact with Inmates.*" (Doc. 173-1 at 38 (emphasis in original)). The previous version of DC-ADM 008 in effect July 25, 2008, like the later version, did not provide remedies to inmates and rather outlined the reporting, investigative, and response procedures regarding claims of sexual harassment and abuse. (Doc. 187-7).

and systems of review that present "some bewildering features" that make it difficult for an inmate to determine "how to navigate [the process] so as to get a claim heard[.]" Ross, 136 S. Ct. at 1860-62.

DOC Defendants' objections to the R&R are unconvincing. They cite no legal authority in support of their argument that Landau was required to state in his responses to discovery requests that he found the grievance procedures opaque and confusing to establish that the procedures are not "available remedies." To the contrary, Landau has clearly raised the argument that the grievance policies are opaque and confusing, and this issue has been vigorously contested by the parties. Landau argued in his opposition to the first motion for summary judgment as well as in his response to DOC Defendants' Objections to the R&R that the administrative remedial schemes are opaque. (Doc. 186 at 6-7, Doc. 216 at 12-13). The Magistrate Judge was warranted to examine and address this issue in the R&R. Additionally, Landau also comments upon the opacity of the procedures and the problems he experienced complaining about Zong's alleged abuse in his July 23, 2019 supplement to the record. (Doc. 225 at 5-7, Doc. 225-2 ¶¶ 21, 28). In any event, Landau's responses to DOC Defendants' discovery requests regarding his efforts to seek administrative relief are not inconsistent with Magistrate Judge Carlson's finding that DC-ADM 804 and DC-ADM 008 are opaque and confusing with respect to filing grievances related to sexual harassment and abuse. In a response to an interrogatory from DOC Defendants asking how he "exhausted [his] administrative remedies with respect to counts

2, 3, 5, 6, 7, 8, 9, 10, 11 of the amended complaint in this action[,]" Landau stated that "I made verbal and written reports under DC-ADM 008. I also filed grievances under DC-ADM 804 and appealed them as far as possible." (Doc. 173-4 at 3). This response indicates that Landau believes that he properly followed DOC's grievance policies to the best of his ability, but it is not an admission that the policies themselves are not opaque and confusing.

The Court also overrules DOC Defendants' objection regarding Landau's purported failure to file grievances under DC-ADM 804 for the federal constitutional claims apart from Landau's claims against Zong arising out of the May 14, 2014 incident, such as the failure to train and supervise claims. In making their argument, DOC Defendants point to partial DOC grievance records that show some of the written grievances Landau filed under DC-ADM 804, as well as to a declaration from a DOC records custodian, to argue that Landau failed to pursue through final appeal, grievances that raised issues related to the failure of prison officials to properly train or supervise corrections officers or Landau's equal protection and invasion of privacy claims. (Doc. 214 at 4, Doc. 173-6, Doc. 173-7, Doc. 173-8).

These records are incomplete, as they do not include a copy of every grievance Landau filed. One of the grievances included in the records is illegible. (Doc. 173-7 at 8). But even assuming the DC-ADM 804 grievances did not fully encompass the scope of Landau's federal constitutional claims, the R&R correctly finds that the entire relevant administrative remedial scheme in DC-ADM 804 and DC-ADM 008 regarding sexual harassment and abuse claims is opaque and confusing. To the extent a discernable

grievance pathway for such claims exists, it appears that any claim *related* to sexual harassment and abuse should be addressed through DC-ADM 008. The text of DC-ADM 804 suggests that any "grievance *regarding* sexual abuse" must be addressed through DC-ADM 008. (Doc. 173-2 at 10 (emphasis added)). DC-ADM 008 further states that "[a]n allegation of sexual abuse, sexual harassment or retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, *and staff neglect or violation of responsibilities that may have contributed to such incidents* can be reported by several means. . . ." (Doc. 187-6 at 42 (emphasis added)). However, as previously discussed, Defendants concede that DC-ADM 008 provides no remedies. The confusing nature of DC-ADM 804 and DC-ADM 008 have led district courts in this Circuit to conclude that DC-ADM 804 and DC-ADM 008, "as to corollary claims 'regard[ing]' sexual abuse" create an opaque, unavailable administrative remedial scheme with respect to those claims. *Sarvey v. Wetzel*, No. 16-cv-157, 2018 WL 1519072, at *5 (W.D. Pa. Mar. 28, 2018); *Frey v. Wilt*, No. 16-cv-780, 2017 WL 6405623, at *6 (M.D. Pa. Dec. 15, 2017) (quoting *Ross*, 136 S. Ct. at 1859-60) ("[W]e nonetheless find the wording of DC-ADM 008 to be so opaque—particularly as to which types of claims 'regard' sexual abuse and therefore do not need to be grieved under DC ADM 804—that the administrative remedy scheme with regard to these types of claims is, 'practically speaking, incapable of use.'"). This Court agrees. *Cf. Ricciardi v. Shumencky*, No. 17-cv-719, 2018 WL 1251834, at *5 (M.D. Pa. Mar. 12, 2018) (finding that claims that prison employee defendants failed to protect the inmate plaintiff from sexual

16

assault "regarded sexual abuse under DC-ADM 008" and did not require the plaintiff to file a grievance under DC-ADM 804); *Bucano v. Austin*, No. 15-cv-67, 2017 WL 4563948, at *8 (W.D. Pa. Oct. 13, 2017) (finding, in case involving claims of deliberate indifference of prison employees to sexual assault allegations, that it was "nonsensical" for DOC defendants to argue that the inmate plaintiff should have followed appellate procedures under DC-ADM 804 when they "expressly told her that they would not address her claims pursuant to DC-ADM 804" and rather that they would handle the claims according to DC-ADM 008).

Finally, the Court rejects DOC Defendants' objection that even under DC-ADM 008, which permits oral complaints, Landau did not properly raise all his specific claims against DOC Defendants. The factual record on this front is contested. DOC Defendants point to a portion of Landau's deposition testimony, where he appears to admit that his complaints predominately, if not solely, related to Zong. (Doc. 214 at 5-6, Doc. 173-5 at 91:5-93:1). They also point to DOC's grievance records for Landau's written grievances filed under DC-ADM 804, which they say fail to address his failure to train, intervene, and supervise claims as well as his equal protection and invasion of privacy claims. (Doc. 214 at 4, Doc. 173-6, Doc. 173-7, Doc. 173-8).

Landau responds that "[t]he full range of [his] pleading is covered in his grievances, to the extent practicable for an inmate." (Doc. 216 at 12). He points to written grievances that show he complained about the sexual harassment by Zong (Doc. 216-1 at 1, 5-6

17

(portions of Grievance No. 538074)) and that he was punished after reporting Zong's misconduct (Doc. 216-1 at 9, 11, 13 (portions of Grievance Nos. 518950 and 520206)). But these written grievances do not appear on their face to state claims that DOC Defendants failed to train, supervise, or intervene with respect to sexual harassment or abuse claims related to Zong, nor to state claims that DOC Defendants invaded Landau's privacy or violated his equal protection rights. Landau has also previously argued that he testified at his deposition that "he informed DOC administrators about issues that were excluded from grievances." (Doc. 186 at 11). However, the portions of his deposition to which he has cited do not definitively establish that he complained about all the specific constitutional violations he is alleging DOC Defendants committed. Instead, the portions of the deposition mainly indicate that he complained to DOC officials about Zong's misconduct. (Doc. 187-2 at 52:17-53:8, 175:8-176:10, 177:1-14). Nevertheless, Landau does assert that he made at least one complaint about "why was someone like this [Zong] even hired" (Doc. 187-2 at 196:11-13) and that he was denied the opportunity to file grievances at various times (Doc. 187-2 at 226:21-268:3). In his July 23, 2019 supplement to the record, he also claims that he did raise other complaints about being punished by being transferred into administrative custody and having his old job and pay rate taken away without being allowed to speak to a counselor (Doc. 225-2 ¶¶ 19-20 (citing Grievance No. 518032 (Doc. 216-1 at 7)), ¶ 25), about Zong's hiring (Doc. 225-2 ¶ 24), about the betting pool/lottery (*id.* ¶ 25), and about

harassment at SCI-Benner he endured due to knowledge he was a victim of Zong (*id.* ¶¶ 26, 31-32 (citing October 11, 2014 letter to Secretary Wetzel at Doc. 216-1 at 5-6), 34-36).

On the state of the record and because the Court finds that DC-ADM 804 and DC-ADM 008 did not provide "available remedies" to Landau regarding his claims in this matter, DOC Defendants have failed to prove that Landau failed to exhaust available administrative remedies.[6]

### IV. CONCLUSION

For the reasons discussed above, the Court will overrule Defendants' Objections to the R&R (Doc. 213) and adopt the R&R (Doc. 205) in its entirety. The Court addresses the remaining motions for summary judgment and respective R&Rs in separate Memorandum Opinions and issues a single Order setting forth the Court's resolution of all pending motions for summary judgment and accompanying R&Rs and listing Landau's remaining claims for trial.

Robert D. Mariani
United States District Judge

---

[6] Because the Court agrees with the finding of the R&R that administrative remedies were not available to Landau because the grievance procedures were confusing and opaque, it need not discuss Landau's contention that Zong intimidated and prevented him from filing a grievance while the abuse was ongoing. (Doc. 186 at 11-12, Doc. 225 at 3-4).

19