# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN LANDAU,                    :
                                 :
                    Plaintiff,   :
          v.                     :          3:15-CV-1327
                                 :          (JUDGE MARIANI)
MARIROSA LAMAS, et al.,          :
                                 :
                    Defendants.  :

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Brian Landau, an inmate in Pennsylvania state prison, originally filed this

action in July 2015 against twenty-one current and former Pennsylvania Department of

Corrections ("DOC") employees and officials.[1]  Landau asserts thirteen federal constitutional

and state tort claims arising out of alleged incidents of sexual harassment and assault

committed against Landau by Defendant Rebecca Zong, a former DOC corrections officer.[2]

---

[1] As stated in Landau's Amended Complaint filed on May 6, 2017 (Doc. 88), the twenty-one defendants are: Marirosa Lamas, Steven Glunt, Tammy Ferguson, Mark Garman, Bobbi Jo Salamon, Eric Tice, Lieutenant Hoover, Lieutenant Vance, Jack O. Evans, Michael Dooley, Joanne Gallo, Lieutenant Drew Young, Rebecca Amber Zong, Sergeant Mark Harpster, Sergeant Tommy Rogers, Corrections Officer Stacie Bumbarger, Corrections Officer Matthew Foster, Corrections Officer Lucas Nicholas, Corrections Officer Cienfuegos, Corrections Officer Brandon Snyder, and Corrections Officer Trainee Miller.  Defendant Zong is represented by private counsel, while the remaining defendants ("DOC Defendants") are represented by DOC counsel.

[2] The surviving claims in this lawsuit are: Count I – Eighth Amendment claim (sexual assault) against Defendant Zong; Count II – Eighth Amendment claim (deliberate indifference) against all Defendants; Count III – Fourteenth Amendment claim (invasion of privacy) against Defendants Zong, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; Count IV – Fourth Amendment claim (unreasonable search and seizure) against Defendant Zong; Count V – Fourth and Eighth Amendment claims (failure to intervene) against Defendants Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller; Count VI – Fourth and Eighth Amendment claims (failure to supervise) against Defendants Lamas, Glunt, Ferguson, Harpster, Rogers, Garman, and Salamon; Count VII – Fourth and Eighth Amendment

(Doc. 88). Collectively, Defendants have filed three separate motions for summary judgment against Plaintiff, with each motion raising various arguments against the numerous claims in Plaintiff's Amended Complaint.[3] (Doc. 170, Doc. 174, Doc. 178). The second motion for summary judgment, joined in by all Defendants, urges the Court to grant summary judgment to Defendants with respect to all of Plaintiff's federal constitutional claims (Counts I, II, III, IV, V, VI, VII, and IX) on the grounds of consent and qualified immunity. (Doc. 174, Doc. 175). In his Report and Recommendation (R&R) addressing the second motion for summary judgment, Magistrate Judge Carlson recommends denying the second motion for summary judgment because there are disputed issues of fact relating to consent and whether nonconsensual sexual contact between prison staff and inmates violates clearly established constitutional rights under the Eighth Amendment. (Doc. 203). DOC Defendants have raised Objections to the R&R (Doc. 207) that have been briefed

---

claims (failure to train) against Defendants Garman, Salamon, Evans, Dooley, Gallo, and Young; Count IX – Fourteenth Amendment claim (equal protection) against Defendants Lamas, Glunt, Ferguson, Tice, Hoover, Vance, Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers; Count XII – sexual assault claim against Defendant Zong; Count XIII – sexual battery claim against Defendant Zong; Count XIV – intentional infliction of emotional distress ("IIED") claim against Defendants Zong, Glunt, Ferguson, Tice, Hoover, Vance, Harpster, Rogers, Salamon, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; Count XV – defamation claim against Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; and Count XVI – state law invasion of privacy claim against Defendants Zong, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller.

[3] The Court finds that permitting separate motions for summary judgment and accompanying briefs to be submitted piecemeal, as well as the ensuing separate objections and accompanying briefs regarding the R&Rs that were filed with respect to the separate motions for summary judgment, has presented an extraordinarily cumbersome, confusing, and laboriously segmented approach to this case that has resulted in an unnecessary and wasteful use of judicial resources. This is particularly true in light of the voluminous record in this case to which neither party made sufficient reference, which made resolution of the issues in this case that much more onerous. The Court places counsel on notice that this type of approach will not be allowed again in this case or any other case.

(Doc. 208, Doc. 215, Doc. 217). Zong did not file Objections to the R&R. Upon *de novo* review of the R&R's finding with respect to consent and clear error review of the R&R's finding with respect to qualified immunity, the Court will overrule DOC Defendants' Objections and adopt the R&R in its entirety for the reasons set forth below. The Court will address factual disputes between the parties and between the parties and the R&R's Statement of the Facts and of the Case (Doc. 203 at 1-8) where relevant throughout this Memorandum Opinion.

## II. STANDARD OF REVIEW

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to de novo review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the

3

authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id.* at 100 (internal citations and quotation marks omitted).

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support

4

the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. ANALYSIS

Defendants' second motion for summary judgment raises the affirmative defenses of consent and qualified immunity. Although the defenses are somewhat intertwined, the Court will first address the defense of consent before turning to qualified immunity.

### A. CONSENT

In their second motion for summary judgment, Defendants point to what they claim are genuinely undisputed facts to argue that "Zong engaged in a mutual relationship with Plaintiff that culminated in sexual contact." (Doc. 175 at 9-10). As a result, they contend, Landau was not subjected to "cruel and unusual punishment." (*Id.* at 10-12). In making this argument, they reference items from the factual record, such as Landau's personal journal, a letter sent by Landau to his friend and fellow inmate, and written records from DOC staff containing statements from Landau that Defendants maintain indicate that Landau welcomed a sexual relationship with Zong. (*Id.*) However, they do not make specific citations to the factual record in their brief in support of their motion, instead relying on their separate statement of material facts.

Landau responds that he has set forth "credible evidence that he did not want to have a sexual relationship with Zong." (Doc. 191 at 6-7). He states that the written remarks of DOC staff are "not Landau's words" and that at his deposition he testified that "several of his terse written statements in 2014 were coerced or even dictated by the security officers who interrogated him." (*Id.*) He also references the report of his expert witness, Professor

Lara Stemple, to argue that a "jury could easily find Landau to have been an unwilling victim." (*Id.* at 7). Landau also contends that consent is unavailable as an affirmative defense as a matter of law because it is not permitted as an affirmative defense under DOC policy and because "unwillingness on the part of the prisoner is not an element of the crime" of institutional sexual assault under Pennsylvania law. (*Id.* at 8-10). Defendants reply that the factual disputes between the parties regarding consent are not genuine, Landau's expert report is irrelevant and inadmissible opinion on an ultimate issue of law, and that prior case law indicates that consent is available as an affirmative defense as a matter of law. (Doc. 198 at 3-5, 7-10).

In the R&R, Magistrate Judge Carlson notes the conflicted state of the law on the availability of "consent as a defense to constitutional tort claims based upon sexual contact between correctional staff and inmates," but finds that "the majority view expressed by the appellate courts can best be characterized as a cautious and halting acceptance of consent as a defense." (Doc. 203 at 14). However, quoting the Third Circuit's recent decision in *Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018), with respect to whether sexual contact is sufficiently objectively serious enough to constitute a constitutional violation, the R&R notes that the inquiry into claims of sexual abuse in prisons "is necessarily contextual [and] fact-specific." (Doc. 203 at 15 (quoting *Ricks*, 891 F.3d at 478)). Therefore, the R&R concludes that the issue of consent in cases like this one is not a matter of law and instead requires a trial. (Doc. 203 at 16 (quoting *Chao v. Ballista*, 772 F. Supp. 2d 337, 350 (D. Mass. 2011)).

The R&R further states that in this case, "the question of whether Landau and Zong engaged in a consensual relationship is one which is riddled with factual disputes, and entails an assessment of the often conflicting and completely contradictory statements which both Zong and Landau have made over time." (Doc. 203 at 17). In particular, the R&R notes that the factual record could lead a jury to believe that Zong coerced Landau, Landau coerced Zong, or that Landau and Zong were involved in a consensual sexual relationship. (Id. at 17-18).

The Court agrees with Magistrate Judge Carlson's assessment of the law governing consent and the disputed factual record present in this matter such that Defendants' second motion for summary judgment should be denied. Landau, perhaps cognizant of the R&R's overall recommendation to deny Defendants' second motion for summary judgment, does not object to the finding of the R&R that consent may be a defense to his constitutional claims. Reviewing this finding for clear error, the Court agrees that the R&R is correct that the Third Circuit has not definitively ruled that consent is per se unavailable as a defense to constitutional claims alleging sexual harassment or abuse brought by an inmate against a prison employee. It is unnecessary to revisit the R&R's summary of the relevant case law in detail, except to emphasize that Landau cites no binding case law to the contrary in his opposition to Defendants' second motion for summary judgment. (Doc. 191 at 7-10). Instead, Landau cites Pennsylvania state law which "criminalizes sexual acts with a prisoner . . . regardless of consent" (Id. at 8 (citing 18 Pa. Stat. and Cons. Stat. Ann. § 3124.2)) and

an unpublished decision from the Western District of Pennsylvania, *Keehn v. Lucas*, No.09-cv-16, 2012 WL 269632 (W.D. Pa. Jan. 30, 2012). *Keehn*, however, involved a factually and procedurally inapposite situation: a ruling on a motion in limine considering the relevance of consent in the context of an Eighth Amendment use of force claim of an inmate under *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981), for the "unnecessary and wanton infliction of pain" serving "no legitimate penological interest" where the defendants were alleged to have used a taser on the inmate. *Keehn*, 2012 WL 269632, at *4-6. Because the court found that the defendants effectively conceded that the use of the taser served no legitimate penological interest, the court determined that the "good faith" of the prison officials was irrelevant. *Id.* The *Keehn* court's decision to apply a standard of conduct from Pennsylvania criminal law, i.e., the unavailability of consent, to the plaintiff's common law tort claims for assault and battery, *id.* at *11-12, does not support Landau's argument that Pennsylvania criminal law on institutional sexual assault should necessarily guide this Court's consideration of his federal constitutional claims. *See Stubbs v. DeRose*, No. 03-cv-2362, 2007 WL 776789, at *6 (M.D. Pa. Mar. 12, 2007) ("Elevating legal rights to the level of constitutional rights is an exercise fraught with the peril of unintended consequences.") (quoting *Phillips v. Bird*, No. 03-cv-247, 2003 WL 22953175, at *5 (D. Del. Dec. 1, 2003)); *cf. Ricks*, 891 F.3d at 478 (noting that 18 Pa. Stat. and Cons. Stat. Ann. § 3124.2 does not "constitutionalize 'every malevolent touch'").

Turning to the specific facts in this matter regarding consent, DOC Defendants argue in their Objections to the R&R that the factual record is so in favor of DOC Defendants' position that the relationship between Zong and Landau was consensual as to preclude a reasonable jury from finding any other way. (Doc. 208 at 2-8). They complain that the R&R failed to "meaningfully discuss[] the evidence of record" and that "[t]here was no analysis of the following evidence [subsequently set forth] and no discussion of Plaintiff's story being blatantly contradicted by the record." (*Id.* at 3-4).

While DOC Defendants raise some valid concerns with the R&R, their objections are ultimately unpersuasive. The Court agrees that the R&R should have more directly grappled with the evidence set forth by both sides rather than making the conclusory statement that the factual record supported three possible interpretations of the events that occurred between Zong and Landau. However, the Court also finds that Defendants did not make Magistrate Judge Carlson's task of sorting through the factual record an enviable or easy one. Defendants' brief in support of their second motion for summary judgment contains no citations to the factual record whatsoever. (Doc. 175 at 2-6). DOC Defendants' brief in support of their Objections to the R&R likewise does not contain any citations to the factual record. (Doc. 208 at 4-7). Defendants appear to be relying solely on their Joint Statement of Material Facts (Doc. 176), but many of the paragraphs in the Joint Statement of Material either do not contain or have deficient pin citations to the voluminous set of

exhibits filed with the Court. Defendants should be aware of the requirements in the plain text of Rule 56 of the Federal Rules of Civil Procedure:

(c) Procedures.

    (1) *Supporting Factual Positions.* **A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:**

        (A) **citing** to particular materials in the record . . .

    . . .

    (3) *Materials Not Cited.* **The court need only consider the cited materials,** but it may consider other materials in the record.

Fed. R. Civ. P. 56(c)(1)(A), (3) (emphasis in bold added). And Defendants should be mindful that "[j]udges are not like pigs, hunting for truffles buried in briefs."[4] *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

After tracking down some of the most relevant evidence referenced by Defendants and comparing this evidence to that cited by Landau in his opposition, the Court agrees with Magistrate Judge Carlson that ruling in favor of Defendants on the issue of consent would require the Court to improperly "weigh the evidence submitted [or] judge the credibility of the witnesses." *Waskovich v. Morgano*, 2 F.3d 1292, 1296 (3d Cir. 1993). It is axiomatic that a Court may not assess credibility in determining whether to grant or deny summary

---

[4] This should also go without saying, but Defendants are also admonished to include pin citations when appropriate when they cite legal authority. They mostly fail to do so in each of the three motions for summary judgment, supporting briefing, and objections to the R&Rs.

judgment.[5] To start, as Landau notes, the factual record indicates that Zong herself has stated that she was "coerced" into a sexual relationship with Landau, contradicting Defendants' position in their second motion for summary judgment that the relationship was consensual. (Doc. 201 at 2-8 (citing Doc. 192-6 at 2, Doc. 192-5 at 6-7, Doc. 187-1 at 72:5-9), Doc. 215 at 6).

The other evidence set forth by Defendants in favor of their position that Zong and Landau had a consensual sexual relationship is countered in some fashion by Landau to demonstrate a genuine dispute of material fact. For example, DOC Defendants argue that a "sworn statement" in Landau's "own handwriting" made to DOC Agent Hobart (Doc. 208 at 4) when Hobart was interviewing him in June 2014 indicates that Landau admits "that anything that happened between [him] and Officer Zong on 4/27/14 and 5/14/14 was 100%

---

[5] *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013):

> Under Rule 56, . . . a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In evaluating the motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

716 F.3d at 772. *See also Doebblers' Penn. Hybrids, Inc. v. Doebbler*, 442 F.3d 812, 820 (3d Cir. 2006) (stating that credibility determinations "are inappropriate to the legal conclusions necessary to a ruling on summary judgment. . . .A District Court should not weigh the evidence and determine the truth itself, but should instead determine whether there is a genuine issue for trial."); *J. F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d. 1254, 1531 (3d Cir. 1990) ("We are keenly aware that credibility determinations are not the function of the Judge; instead the non-movant's evidence must be credited at this stage.").

consensual on my behalf." (Doc. 192-3 at 6).[6] However, Landau argues that this these

statements "were coerced or even dictated by the security officers who interrogated him"

(Doc. 191 at 7), pointing to his deposition testimony where he said he wrote out the

statement that Hobart asked him to write in order to "get out of the hole" (restrictive

housing):

> She [Hobart] stood right over me with her pen and I said, what do you want
> me to write? And she's like well, write everything for me. She wanted me to
> give her this long drawn out statement. I said I'm not doing it. That's not
> what I wanted to do. And I said well, what do I need to do? And she stated
> the dates, put my name. And I said—because I wanted out of the hole. That
> was the whole purpose of signing that statement. I was in the hole. I wanted
> out. I begged her five times to let me out of the hole. She had said she
> spoke to Vance. And she could do that for me. I said well, look her [sic],
> what do you want? I sat there and she dictated that statement to me.
>
> . . .
>
> [In response to question about what would be inaccurate in the statement:]
> That it was one hundred percent consensual on my behalf, yeah. That would
> be inaccurate.

(Doc. 187-2 at 112:18-113:5, 113:15-16). The Court cannot say that no reasonable juror

would accept Landau's explanation of his written statement to Hobart.

Defendants make a similar argument with respect to Landau's July 14, 2014 letter to

his friend, inmate Mike Brown, that contains statements that one could interpret to mean

that Landau was attracted to Zong and appreciated her attentions (Doc. 208 at 4):

---

[6] Though Defendants cite this statement, they did not include it as an attachment to their statement of
material facts. Instead, Landau included it as part of his statement of material facts in response. (*See* Doc.
190 ¶ 19 (noting that Defendants' Hobart Memo (Doc. 177-7) is incomplete)).

> I don't know if I really did or do love her, I know I was in love with that ass!
> 😊 . . . I don't know if I will contact "it" when I go home . . . I love her! Where
> has she been all my life. 😊 . . . Tell him I used to beat off and hump that
> bed every night thinking about Zong!

(Doc. 176 ¶ 21, Doc. 177-9 at 2, 6-7). Landau counters that Defendants "mischaracterize[]"

this letter, and that Landau "testified at length [in his deposition] about the meaning of the

document, which included satirical references and jokes." (Doc. 190 ¶ 21). For example,

Landau explains, the statement about "Zong's ass" was an inside joke with Brown and his

statements in the letter were colored by his time "in the hole . . . [when] at the time I really

didn't know how I felt . . . [and that after] [t]herapy and, you know, pulling myself away from

the situation, I was able to process things a little different." (Doc. 187-2 164:5-20; *see also*

*id.* at 166:3-15 (Landau explaining that statement about "beat[ing] off and hump[ing] that

bed every night thinking about Zong" was "a joke to get a rise out of [other inmate Joe]

Falcon")). Landau also points to the report of his proposed expert witness on prison sexual

abuse interpreting the letter to Brown and concluding that: "It is wholly unsurprising to me

that a young man sexually victimized by a woman in prison, which was widely talked about

by those around him, would attempt to recast the experience as something he relished."[7]

---

[7] Although they could have done so, Defendants do not object to the Court's consideration of the expert report because it was submitted by Landau without an accompanying affidavit or unsworn declaration made under penalty of perjury in accordance with 28 U.S.C. § 1746. *See* Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendment; *Burrell v. Minnesota Min. Mfg. Co.*, No. 08-cv-87293, 2011 WL 5458324, at *1 n.1 (refusing to consider unsworn expert report when opposing party objected and noting "The United States Court of Appeals for the Third Circuit has found that an unsworn expert report 'is not competent to be considered on a motion for summary judgment.' *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989)."). Their only objection to the Court's consideration of this report is that an expert cannot provide

(Doc. 190 ¶ 21, Doc. 191 at 7, Doc. 192-4 at 5). As with Landau's written statement to Hobart, the Court cannot find, as a matter of law, that no reasonable juror would disagree with Defendants' argument that Landau consented to a sexual relationship with Zong.

Statements from Landau's "journal," a notebook containing brief commentary on Landau's exercise routine and emotional state, also do not prove that Landau consented to a sexual relationship with Zong. (Doc. 177-19, Doc. 192-10, Doc. 192-11). These statements cited by Defendants include "Hate myself for Caring[,]" "give up unhealthy desires and thoughts[,]" "stop thinking about her!", "Hate myself for having feelings 4 a cop[,]" and "Maybe I was in Love? Only FOOLS fall in Love! ☹". (Doc. 177-19 at 8-10, 15, 21). Some of these statements may not clearly apply to Zong, and having conflicted feelings about Zong, as Landau argues in opposing summary judgment, does not establish that he consented to a sexual relationship with Zong.

None of the above evidence, or other evidence proffered by Defendants, forecloses the existence of genuine disputes of material fact regarding consent. This is not a case, as Defendants suggest, where the evidence is so overwhelming that alternate interpretations of the evidence are wholly implausible, or where the opposing party fails to dispute or explain the evidence. The cases that Defendants cite as presenting analogous factual circumstances are not on point, as they all involved the failure of the plaintiff inmates to

---

a legal opinion on an ultimate issue of law. (Doc. 198 at 9 (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006)).

point to non-conclusory evidence in the record to counter the defendants' showing that the plaintiff failed to exhaust administrative remedies. *Jackson v. Taylor*, 467 F. App'x 98, 99-100 (3d Cir. 2012); *Wakeley v. Giroux*, No. 12-cv-2610, 2014 WL 1515681, at *3, 17-19 (M.D. Pa. Apr. 15, 2014); *Dunbar v. Barone*, No. 09-cv-245, 2012 WL 259982, at *5-8 (W.D. Pa. Jan. 27, 2012); *see also Armstrong v. Wetzel*, No. 13-cv-1300, 2015 WL 2455418, at *11 (W.D. Pa. May 22, 2015) (finding that plaintiff "has come forward with no evidence to raise a genuine issue of material fact" or to "explain" evidence raised by defendants on summary judgment that indicated he had staged an assault in prison for which he was suing defendants).

Thus, for the reasons stated above, the Court will adopt the R&R's findings regarding consent and will deny the corresponding portion of Defendants' motion for summary judgment.

### B. QUALIFIED IMMUNITY

Defendants also argue that they are entitled to qualified immunity on the federal constitutional claims as Landau's constitutional rights were not violated because he consented to the sexual contact with Zong and because even if he did not consent, "the Third Circuit only just decided that sexual abuse constitutes cruel and unusual punishment under the Eighth Amendment," citing *Ricks*, 891 F.3d at 471 ("Whether sexual abuse can constitute 'cruel and unusual punishment' under the Eighth Amendment is a matter of first impression in our Court.") (Doc. 175 at 8). As previously noted, Landau responds that

16

consent is both unavailable as a defense as a matter of law and factual disputes here regarding consent preclude entry of summary judgment. (Doc. 191 at 11). He also counters that the right of Landau to be free from sexual abuse has been clearly established for years, citing Pennsylvania state law criminalizing sexual contact between an inmate and a DOC employee, 18 Pa. Stat. and Cons. Stat. Ann. § 3124.2, the federal Prison Rape Elimination Act, 34 U.S.C. § 30301, *et seq.* (formerly cited as 42 U.S.C. § 15601, *et seq.*), and associated regulations 28 C.F.R. §§ 115.5-115.501, and the internal policies of the DOC. (Doc. 191 at 11-12). He also cites district court decisions from the Third Circuit prior to *Ricks* permitting Eighth Amendment claims regarding sexual abuse in prisons. (Doc. 191 at 13); *Carrigan v. Davis*, 70 F. Supp. 2d 448, 454, 461 (D. Del. 1999); *Minton v. Guyer*, No. 12-cv-6162, 2014 WL 1806844, at *7 n.5 (E.D. Pa. May 7, 2014). He also notes that Defendants fail to cite any authority granting qualified immunity to prison officials for constitutional claims related to sexual abuse of inmates. (Doc. 191 at 14).

Magistrate Judge Carlson, as discussed *supra*, determined in the R&R that consent was a matter for the jury in this case, and this Court agrees with that determination. He also finds that it is not dispositive that *Ricks* may have been the first Third Circuit case to address "the question of whether sexual abuse of inmates by prison officials offends the Eighth Amendment": "Rather, *Ricks* represented the latest in an unbroken line of cases which have long recognized that sexual abuse of prisoners by their jailers offends constitutional sensibilities." (Doc. 203 at 22). Citing *Carrigan*, numerous decisions from

other circuit courts of appeals, and "one of the most ancient proscriptions known in the law, a prohibition against rape and non-consensual sex[,]" Magistrate Judge Carlson concludes that it would have been clear to correctional officers in 2014 that "an inmate's right to be free from the threat of coerced sexual activity at the hands of correctional officers was clearly established." (Doc. 203 at 22-24). Thus, Defendants cannot claim qualified immunity. (*Id.* at 24).

DOC Defendants do not object to this finding of the R&R. Upon review for clear error, the Court will adopt the R&R's determination that Defendants cannot claim qualified immunity because Landau's right to not be subjected to sexual abuse in prison was clearly established. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity serves the dual purpose of holding government officials accountable when their power is exercised unreasonably and protecting those officials from "harassment, distraction, and liability when they perform their duties reasonably." *Id.* "[Q]ualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

18

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court articulated a two-step test to determine the appropriate application of qualified immunity. A Court must decide: (1) whether the facts alleged or shown by the plaintiff demonstrate the violation of a constitutional right; and (2) if so, whether that right was "clearly established" at the time of the alleged violation. *Id.* at 201. Qualified immunity attaches unless the official's conduct violated such a clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "As a general matter, a right is clearly established for purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006) (quoting *Saucier*, 533 U.S. at 202). While Supreme Court "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quotation marks and alterations omitted). This precedent may be in the form of "applicable Supreme Court precedent [, but] '[e]ven if none exists, it may be possible that a "robust consensus of cases of persuasive authority" in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity.'" *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247-48 (3d Cir. 2016) (quoting *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016)). "[I]n some cases 'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held

unlawful.'" *Williams*, 455 F.3d at 191 (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Nevertheless, the Supreme "Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775-76, (2015)).

In the R&R, Magistrate Judge Carlson cites the opinions of numerous circuit courts of appeals, all issued before the Third Circuit's decision in *Ricks*, that establish "a robust consensus of cases of persuasive authority," *L.R.*, 836 F.3d at 247-48, that indicate that sexual abuse of inmates by prison staff can violate the Eighth Amendment. (Doc. 203 at 22 (citing decisions from the D.C., Second, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits)). Further, the Third Circuit has, in other contexts involving government employees, found that "freedom from invasion of [one's] personal security through sexual abuse" is a clearly established fundamental right protected by the Constitution. *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (involving claims against school district officials arising from a teacher's sexual assault of a student). Indeed, given the allegations presented here by Landau—sexual harassment and abuse up to and including rape—"the right here is so 'obvious' that it could be deemed clearly established even without materially similar cases." *Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) (involving police officer inappropriately touching and taking indecent photographs of a possible sexual assault victim for his own gratification and not in furtherance of an investigation of the sexual assault)

(citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Defendants were on notice that Landau had a right to be free from sexual abuse, and thus, the Court denies their request for summary judgment on the grounds of qualified immunity.

## IV. CONCLUSION

For the reasons discussed above, the Court will overrule Defendants' Objections to the R&R (Doc. 207), adopt the R&R (Doc. 203) in its entirety, and deny Defendants' second motion for summary judgment (Doc. 174). The Court addresses the other motions for summary judgment and respective R&Rs in separate Memorandum Opinions and issues a single Order setting forth the Court's resolution of all pending motions for summary judgment and accompanying R&Rs and listing Landau's remaining claims for trial.

Robert D. Mariani
United States District Judge