# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN LANDAU, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | 3:15-CV-1327 |
| | : | (JUDGE MARIANI) |
| MARIROSA LAMAS, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Brian Landau, an inmate in Pennsylvania state prison, originally filed this action in July 2015 against twenty-one current and former Pennsylvania Department of Corrections ("DOC") employees and officials.[1] Landau asserts thirteen federal constitutional and state tort claims arising out of alleged incidents of sexual harassment and assault committed against Landau by Defendant Rebecca Zong, a former DOC corrections officer.[2]

---

[1] As stated in Landau's Amended Complaint filed on May 6, 2017 (Doc. 88), the twenty-one defendants are: Marirosa Lamas, Steven Glunt, Tammy Ferguson, Mark Garman, Bobbi Jo Salamon, Eric Tice, Lieutenant Hoover, Lieutenant Vance, Jack O. Evans, Michael Dooley, Joanne Gallo, Lieutenant Drew Young, Rebecca Amber Zong, Sergeant Mark Harpster, Sergeant Tommy Rogers, Corrections Officer Stacie Bumbarger, Corrections Officer Matthew Foster, Corrections Officer Lucas Nicholas, Corrections Officer Cienfuegos, Corrections Officer Brandon Snyder, and Corrections Officer Trainee Miller. Defendant Zong is represented by private counsel, while the remaining defendants ("DOC Defendants") are represented by DOC counsel.

[2] The surviving claims in this lawsuit are: Count I – Eighth Amendment claim (sexual assault) against Defendant Zong; Count II – Eighth Amendment claim (deliberate indifference) against all Defendants; Count III – Fourteenth Amendment claim (invasion of privacy) against Defendants Zong, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; Count IV – Fourth Amendment claim (unreasonable search and seizure) against Defendant Zong; Count V – Fourth and Eighth Amendment claims (failure to intervene) against Defendants Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller; Count VI – Fourth and Eighth Amendment claims (failure to supervise) against Defendants Lamas, Glunt, Ferguson, Harpster, Rogers, Garman, and Salamon; Count VII – Fourth and Eighth Amendment

(Doc. 88). Collectively, Defendants have filed three separate motions for summary judgment against Plaintiff, with each motion raising various arguments against the numerous claims in Plaintiff's Amended Complaint.[3] (Doc. 170, Doc. 174, Doc. 178). The third motion for summary judgment, filed by DOC Defendants, urges the Court to grant summary judgment to DOC Defendants with respect to all of Plaintiff's claims against DOC Defendants (Counts II, III, V, VI, VII, IX, XIV, XV, and XVI) on various grounds, including applicable statute of limitations, sovereign immunity, and the merits. (Doc. 178, Doc. 179). In his Report and Recommendation (R&R) addressing the third motion for summary judgment, Magistrate Judge Carlson recommends granting in part and denying in part the third motion for summary judgment. (Doc. 204). DOC Defendants have raised Objections to the R&R (Doc. 211, Doc. 212). Landau did not respond to DOC Defendants' Objections, but instead raised his own set of Objections to the R&R (Doc. 219) to which DOC

---

claims (failure to train) against Defendants Garman, Salamon, Evans, Dooley, Gallo, and Young; Count IX – Fourteenth Amendment claim (equal protection) against Defendants Lamas, Glunt, Ferguson, Tice, Hoover, Vance, Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers; Count XII – sexual assault claim against Defendant Zong; Count XIII – sexual battery claim against Defendant Zong; Count XIV – intentional infliction of emotional distress ("IIED") claim against Defendants Zong, Glunt, Ferguson, Tice, Hoover, Vance, Harpster, Rogers, Salamon, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; Count XV – defamation claim against Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; and Count XVI – invasion of privacy claim against Defendants Zong, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller.

[3] The Court finds that permitting separate motions for summary judgment and accompanying briefs to be submitted piecemeal, as well as the ensuing separate objections and accompanying briefs regarding the R&Rs that were filed with respect to the separate motions for summary judgment, has presented an extraordinarily cumbersome, confusing, and laboriously segmented approach to this case that has resulted in an unnecessary and wasteful use of judicial resources. This is particularly true in light of the voluminous record in this case to which neither party made sufficient reference, which made resolution of the issues in this case that much more onerous. The Court places counsel on notice that this type of approach will not be allowed again in this case or any other case.

Defendants have responded (Doc. 220) and Landau has replied (Doc. 221). Upon *de novo* review of the R&R, the Court will sustain in part and overrule in part DOC Defendants' Objections, overrule Landau's Objections, and adopt in part and not adopt in part the R&R for the reasons set forth below.

## II. RELEVANT FACTUAL BACKGROUND

It serves little purpose to engage in an extended recounting of the undisputed facts of this case, as the parties dispute much of the events that transpired in 2013 and 2014 that underly Landau's lawsuit. Rather, it suffices for the Court to summarize the relevant material facts and allegations, noting where the parties disagree. Additionally, as Landau has named a great number of individuals as defendants under a variety of legal theories and their liability is connected to their roles as DOC officials and employees, it is helpful to classify them according to their involvement with Landau and his claims.

Landau is an inmate incarcerated in the Pennsylvania DOC. (Doc. 180 ¶ 1). Landau was incarcerated at SCI-Rockview when the events underlying this lawsuit began in August 2013, and he was later transferred to SCI-Benner. (*Id.* ¶¶ 4-5, 8). Zong was a corrections officer or corrections officer trainee with the DOC and worked at SCI-Rockview between August 2013 and June 2014. (*Id.* ¶¶ 3, 8, Doc. 88 ¶ 17). Landau alleges that Zong sexually harassed, abused, and raped him. (Doc. 180 ¶ 8, Doc. 88 ¶¶ 30-78). These allegations include: Zong made unwelcome sexual advances on Landau (Doc. 88 ¶¶ 30-39, Doc. 187-2 at 52:7-15, 56:5-57:11, 66:3-13, 77:18-78:19); Zong coerced Landau into performing

3

"demeaning sexual acts by threatening Landau with a report of sexual misconduct if Landau refused to follow Zong's instructions," including touching Landau and forcing him to masturbate in front of her (Doc. 88 ¶¶ 46-66, Doc. 187-2 at 52:7-53:25, 77:18-78:19); and most seriously, forcing Landau to engage in sexual activity, including intercourse, in the chapel at SCI-Rockview on two occasions in April and May 2014 (Doc. 88 ¶¶ 69-78, Doc. 187-2 at 130:8-136:17, 142:12-144:13). Zong claimed at her deposition and in other parts of the factual record that Landau coerced her into engaging in sexual activity. (Doc. 187-1 at 72:5-9, Doc. 192-5 at 6-7, Doc. 192-6 at 2). DOC Defendants claim that Landau and Zong engaged in a consensual sexual relationship. (Doc. 175 at 10-12, Doc. 176 ¶¶ 17-58). Landau alleges that certain DOC Defendants knew of Zong's abuse but did nothing. (Doc. 88 ¶¶ 79-89, Doc. 194 ¶¶ 38, 40, 43, 46). DOC Defendants dispute this. (Doc. 180 ¶¶ 38, 40, 43, 46).

Landau states that with the assistance of his friend, inmate Mike Brown, he anonymously reported Zong to DOC Defendant Tice in June 2014 by providing a copy of a letter Zong wrote him. (Doc. 187-2 at 148:1-150:10). Zong was investigated by DOC and fired and was later prosecuted by the Commonwealth. (Doc. 180 ¶¶ 27, 33, Doc. 194 ¶¶ 27, 33). Landau was transferred to SCI-Benner and contends that he was mistreated, harassed, and punished instead of being treated as a victim of sexual assault. (Doc. 88 ¶¶ 95-98, 104-06, 114-18, 169, 184, 186, 232-44). He also argues that DOC Defendants treated him differently than other inmates who have been the victims of sexual assault

4

committed by male prison guards. (*Id.* ¶¶ 166, 170, 173). He further argues that DOC

Defendants did not conduct proper training under the federal Prison Rape Elimination Act

("PREA"), 34 U.S.C. § 30301, *et seq.* (formerly cited as 42 U.S.C. § 15601, *et seq.*) (Doc.

88 ¶¶ 194-231); failed to take other proper measures to prevent sexual abuse (*id.* ¶¶ 160-

65, 167-68); and failed to supervise and discipline Zong (*id.* ¶¶ 133-38, 176-77, 189-90).

He also claims that certain DOC Defendants callously engaged in a betting pool or lottery

regarding sexual relations between Landau and Zong rather than taking the alleged sexual

abuse seriously, as required by prison regulations and the law. (*Id.* ¶¶ 145, 149-55). DOC

Defendants deny these allegations.

DOC Defendants can be broadly categorized into four groups, based on their roles at

DOC and their alleged involvement in the events at issue. The first group is DOC

corrections officers at SCI-Rockview: Defendants Rogers, Bumbarger, Foster, Nicholas,

Cienfuegos, Miller, Harpster, and Snyder. The second group is DOC security officers at

SCI-Rockview: Defendants Tice, Hoover, and Vance. The third group is DOC management

officials at SCI-Rockview and SCI-Benner: Lamas, Glunt, and Ferguson. The final group is

DOC training, hiring, and compliance officials: Defendants Garman, Salamon, Evans,

Dooley, Gallo, and Young.

### III. STANDARD OF REVIEW

A District Court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

5

recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to de novo review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id*. at 100 (internal citations and quotation marks omitted).

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127

S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine* issue of *material* fact.
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

DOC Defendants' third motion for summary judgment raises numerous arguments

seeking summary judgment on all claims Landau has alleged against them. Many of the

claims are related; for example, Landau's Eighth Amendment claims all allege some failing

of the DOC Defendants to prevent or properly respond to Landau's complaints of sexual

harassment and abuse against Zong. Accordingly, the Court will address Landau's claims

in related groups: (A) his Eighth Amendment claims in Counts II (deliberate indifference

claim against all Defendants), V (failure-to-intervene claim against Defendants Harpster,

Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller), VI (failure-to-

supervise claim against Defendants Lamas, Glunt, Ferguson, Harpster, Rogers, Garman,

and Salamon), and VII (failure-to-train claim against Defendants Garman, Salamon, Evans,

Dooley, Gallo, and Young); (B) his Fourteenth Amendment invasion of privacy claim in

Count III against Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller related to the alleged betting pool/lottery; (C) his Fourteenth Amendment equal protection claim in Count IX against Defendants Lamas, Glunt, Ferguson, Tice, Hoover, Vance, Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers related to DOC's treatment of Landau as a possible victim and response to Zong as a possible perpetrator; (D) his IIED claim in Count XIV against Defendants Glunt, Ferguson, Tice, Hoover, Vance, Harpster, Rogers, Salamon, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller; and (E) his defamation and state law invasion of privacy claims in Counts XV and XVI against Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller related to the alleged betting pool/lottery.

## A. EIGHTH AMENDMENT CLAIMS (COUNTS II, V, VI, AND VII)

Landau raises four related, overlapping Eighth Amendment claims against various DOC Defendants. As the R&R addresses each claim in piecemeal fashion by organizing its discussion around particular groups of DOC Defendants rather than by claim, the Court will attempt to untangle the claims and focus its analysis accordingly.

### 1. DELIBERATE INDIFFERENCE TO SUBSTANTIAL RISK OF SERIOUS HARM (COUNT II)

Landau brings an Eighth Amendment claim of deliberate indifference to substantial risk of serious harm against all DOC Defendants. (Doc. 88 ¶¶ 274-87). The parameters of these claims differ as to each defendant but relate to DOC Defendants' alleged failures to

implement or follow certain policies and trainings and respond to and stop Zong's purported abuse of Landau.

DOC Defendants move for summary judgment on this claim, arguing that "there is no evidence of personal involvement or knowledge and acquiescence in any sexual relationship between Zong and Plaintiff [and that] [t]here is no evidence of knowledge of deficiencies that created a substantial risk to Plaintiff." (Doc. 179 at 13). They contend that "DOC has a PREA policy[,] [s]taff are trained[, and] [v]iolators have been escorted off premises, terminated and prosecuted." (Id.) They do not cite to any portion of the factual record in making these arguments in their brief, which Landau points out in opposing summary judgment (Doc. 195 at 14) and to which DOC Defendants again reply that Landau has not provided any evidence. (Doc. 202 at 10).

The R&R is unclear in its recommendations regarding this claim. It only explicitly considers the deliberate indifference claim with respect to the DOC Defendants who are corrections officers at SCI-Rockview (Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller) and recommends denying summary judgment due to factual disputes in the record regarding their knowledge of Zong's alleged abuse of Landau. (Doc. 204 at 31-35). The R&R recommends granting summary judgment in favor of Vance, Tice, and Hoover "based upon allegations that they harshly questioned Landau after the fact about this sexual contact with Zong as part of the investigation into this incident and suggested that he, too, may have engaged in illegal conduct[,]" because this conduct does

10

not rise to the level of a constitutional violation, but the R&R does not specifically state this recommendation is in reference to the deliberate indifference claim against Vance, Tice, and Hoover. (*Id.* at 44-47). And the R&R only tangentially considers the deliberate indifference claim with respect to the remaining DOC Defendants and in the context of Landau's similar Eighth Amendment failure-to-supervise and failure-to-train claims against those defendants (Lamas, Glunt, Ferguson, Garman, Salamon, Evans, Dooley, Gallo, and Young) by recommending granting summary judgment as to these claims. (*Id.* at 37-44). This is perhaps because Landau's deliberate indifference claims against these defendants appear indistinguishable from his failure-to-supervise and failure-to-train claims against them in which he alleges they failed to implement or follow certain policies and procedures to protect him from harm.[4] (Doc. 88 ¶¶ 276-81, 302-04, 306, 309-12). Thus, as best the Court can discern, the R&R explicitly recommends denying summary judgment on the deliberate indifference claim as to Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller, and the R&R implicitly recommends granting summary judgment as to Vance, Tice, Hoover, Lamas, Glunt, Ferguson, Garman, Salamon, Evans, Dooley, Gallo, and Young. The parties have submitted objections to the R&R. The Court will adopt the R&R in part and not adopt the R&R in part with respect to Landau's deliberate indifference claim in Count II.

---

[4] For this reason, the Court will address the Eighth Amendment claims against Lamas, Glunt, Ferguson, Garman, Salamon, Evans, Dooley, Gallo, and Young in the discussion of the failure-to-supervise and failure-to-train claims.

To be liable for a claim for deliberate indifference to a substantial risk of serious

harm under the Eighth Amendment, the Third Circuit has stated that:

> a defendant prison official must both "know[ ] of and disregard[ ] an excessive
> risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114
> S. Ct. 1970 (1994). The knowledge element of deliberate indifference is
> subjective, not objective knowledge, meaning that the official must actually be
> aware of the existence of the excessive risk; it is not sufficient that the official
> should have been aware. *See id.* at 837–38, 114 S. Ct. 1970. However,
> subjective knowledge on the part of the official can be proved by
> circumstantial evidence to the effect that the excessive risk was so obvious
> that the official must have known of the risk. *See id.* at 842, 114 S. Ct. 1970.
> Finally, a defendant can rebut a prima facie demonstration of deliberate
> indifference either by establishing that he did not have the requisite level of
> knowledge or awareness of the risk, or that, although he did know of the risk,
> he took reasonable steps to prevent the harm from occurring. *See id.* at 844,
> 114 S. Ct. 1970.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (full citation to *Farmer* added).

The Third Circuit has further elaborated:

> A properly stated Eighth Amendment claim must allege a subjective and
> objective element. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.
> Ed. 2d 156 (1992). First, it must appear from the complaint that the
> defendant official acted with a "sufficiently culpable state of mind." *Wilson v.
> Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).
> Second, the conduct must have been objectively "harmful enough," or
> "sufficiently serious" to violate the Constitution. *Id.* at 298, 303, 111 S. Ct.
> 2321.

*Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). "[R]isk of harm is evaluated objectively."

*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Atkinson v.*

*Taylor*, 316 F.3d 257, 262 (3d Cir. 2003)). "Objectively serious harm also requires an

assessment of society's view of the risk; i.e., whether 'it violates contemporary standards of

decency to expose *anyone* unwillingly to such a risk.'" *Betts*, 621 F.3d at 257 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

The legal standard discussed above is applicable in a situation based on "direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that [Zong] posed)." *Beers-Capitol*, 256 F.3d at 135. The legal standard differs somewhat for a claim based on the deliberate indifference of a policymaker, either in the supervision or training context. (Doc. 51 at 12-13 (discussing legal standards)); *see also Beers-Capitol*, 256 F.3d at 135 ("For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, *Sample*'s four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.") (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). The Court will elaborate on the legal standard governing the failure-to-supervise and failure-to-train claims in Counts VI and VII in the sections of this Memorandum Opinion discussing those claims. Additionally, as the deliberate indifference claims pleaded against Lamas, Glunt, Ferguson, Garman, Salamon, Evans, Dooley, Gallo, and Young are predicated on their alleged failures as policymakers in supervision and training, the Court will address Landau's Eighth Amendment claims against them in the failure-to-supervise and failure-to train portions of the Memorandum Opinion addressing Counts VI and VII.

Turning to the R&R's analysis of Landau's deliberate indifference claim in Count II and its discussion of particular DOC Defendants, the Court begins with the R&R's recommendation to deny summary judgment on Count II as to Rogers, Bumbarger, Nicholas, and Cienfuegos. The R&R states that there is "an irreconcilable conflict in the evidence" with respect to these defendants' knowledge of Zong's abuse of Landau. (Doc. 204 at 34). DOC Defendants do not object to this recommendation. (Doc. 212 at 6). Upon review for clear error, the Court agrees with this finding in the R&R and will adopt it.

Stating that there is a similar factual dispute with respect to Harpster, Foster, Snyder, and Miller, the R&R also recommends denying summary judgment on Count II as to them. (Doc. 204 at 34). DOC Defendants object to this recommendation, arguing that there is no evidence in the record to support Landau's claim that these defendants knew about Zong's abuse of Landau. (Doc. 212 at 6-7). Unlike DOC Defendants' lax approach to citing the factual record at other points in the process of briefing summary judgment and responding to the various R&Rs, they cite to Landau's deposition transcript in an attempt to establish that Landau did not state that Harpster, Foster, Snyder and Miller knew that Zong was abusing him. (Doc. 187-2, Doc. 187-3). Landau did not submit an opposition to DOC Defendants' objections. The Court has reviewed the portions of the record to which DOC Defendants cite (Doc. 187-2 at 156, Doc. 187-3 at 349-50, 364-69) and agrees that they have established an absence of a genuine dispute of material fact with respect to the subjective knowledge of Harpster and Snyder. These portions of Landau's deposition do

14

not establish that these defendants knew of Zong's specific misconduct, while they may have known that Zong spent time in front of Landau's cell or about Zong's allegedly generally promiscuous behavior. However, Landau also testified that Foster and Miller knew of the abuse insofar as they were participants in the betting pool/lottery. (Doc. 187-2 at 156, Doc. 187-3 at 350-51, 365-66). Accordingly, the Court will not adopt this portion of the R&R with respect to Count II as to Harpster and Snyder and will grant summary judgment in their favor on Count II, but the Court will adopt the R&R as to Foster and Miller and will deny them summary judgment on Count II.

Finally, the R&R recommends granting summary judgment as to Vance, Tice, and Hoover because it construes Landau's claims against them to be for verbal harassment, which does not state an Eighth Amendment claim. (Doc. 204 at 44). Landau objects that the R&R misunderstands its allegations against Vance, Tice, and Hoover, contending instead that Landau's claims are based on a "malicious deviation from the DOC protocol for victims of sexual abuse." (Doc. 219 at 14). However, the Court agrees with the R&R that Landau's claim against Vance, Tice, and Hoover is essentially for ridiculing him and treating him harshly while investigating the incident of sexual abuse with Zong. (Doc. 88 ¶¶ 236-44). For the reasons stated in the R&R, such a claim is not actionable under the Eighth Amendment.

Accordingly, for the reasons stated above, the Court will adopt the R&R in part and not adopt it in part. The Court will grant summary judgment on Count II (deliberate

indifference) in favor of Harpster, Snyder, Vance, Tice, and Hoover and deny summary judgment on Count II to Rogers, Bumbarger, Nicholas, Cienfuegos, Foster, and Miller.[5]

## 2. FAILURE TO INTERVENE (COUNT V)

In addition to his deliberate indifference claim, Landau also brings a related Eighth Amendment claim of failure to intervene in Count V against DOC Defendants who are corrections officers at SCI-Rockview: Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Snyder, and Miller. (Doc. 88 ¶¶ 296-300). Landau alleges that these defendants either directly knew about Zong's abuse (Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller) (Doc. 88 ¶ 298), knew about Zong's generally inappropriate behavior towards Landau (Harpster and Rogers) (Doc. 88 ¶ 297), or knew that Zong was a danger to prisoners because of her "sexual practices" (Snyder and Foster) (Doc. 88 ¶ 299).

In seeking summary judgment on this claim, DOC Defendants make a similar argument to the one they make with respect to the deliberate indifference claim, arguing that "there is no evidence Harpster, Rogers, Foster, Snyder, Nicholas, or Miller were personally involved or knew of and had acquiesced in any relationship between Zong and Plaintiff[, and] [a]dditionally, both Bumbarger and Cienfuegos deny knowledge." (Doc. 179

---

[5] As explained in Sections IV.A.3 and IV.A.4, *infra*, the Court will grant summary judgment to DOC Defendants Lamas, Glunt, Ferguson, Garman, and Salamon on the failure-to-supervise claim (Count VI) and DOC Defendants Garman, Salamon, Evans, Dooley, Gallo, and Young on the failure-to-train claim (Count VII). Accordingly the Court will grant these defendants (Lamas, Glunt, Ferguson, Garman, Salamon, Evans, Dooley, Gallo, and Young) summary judgment on Landau's deliberate indifference claim in Count II.

at 13). They again do not cite to any portion of the factual record in making these arguments in their brief, which Landau points out in opposing summary judgment. (Doc. 195 at 14). DOC Defendants reply that Landau has not provided any evidence that Harpster, Rogers, Foster, Snyder, Nicholas or Miller "were present or could have stopped the alleged sexual abuse," but again do not cite the factual record. (Doc. 202 at 11).

Like the deliberate indifference claim alleged against Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller, the R&R recommends denying summary judgment as to Landau's failure-to-intervene claim due to factual disputes in the record regarding their knowledge of Zong's abuse. (Doc. 204 at 34-35). The R&R more specifically addresses DOC Defendants' contention that Landau has not shown that the defendants had the opportunity to intervene and failed to do so, although it does not specify that DOC Defendants only advanced this contention as to Harpster, Rogers, Foster, Snyder, Nicholas, and Miller. (Doc. 202 at 11, Doc. 204 at 35). The R&R concludes that determining whether the defendants had the opportunity to intervene is a "fact-specific inquiry which turns on the circumstances of each case." (Doc. 204 at 35.) The R&R does not cite to the factual record in reaching its conclusions, other than a broad citation to Landau's deposition transcript (Doc. 187-2, Doc. 187-3), which is nearly 400 pages long. The Court will adopt the recommendation of the R&R in part and not adopt it in part.

The legal standard for a failure-to-intervene claim in this Circuit is set forth as follows:

> [I]n a case where an inmate claims an officer had a duty to take reasonable
> steps to protect a victim from another officer's use of excessive force, the
> inmate must prove that (1) the officer had a duty to intervene; (2) the officer
> had the opportunity to intervene; and (3) the officer failed to intervene. *Smith
> v. Mensinger,* 293 F.3d 641, 650-51 (3d Cir. 2002). Specifically, "an officer is
> only liable if there is a realistic and reasonable opportunity to
> intervene." *Id.* at 651.

*Knauss v. Shannon,* No. 08-cv-1698, 2010 WL 569829, at *15 (M.D. Pa. Feb. 12, 2010).

The Court's disposition of this claim follows its disposition of the deliberate

indifference claim against Harpster, Rogers, Bumbarger, Foster, Nicholas, Cienfuegos,

Snyder, and Miller. DOC Defendants do not object to the recommendation to deny

summary judgment as to Rogers, Bumbarger, Nicholas, and Cienfuegos on the failure-to-

intervene claim in Count V due to factual disputes, and so the Court will adopt the

recommendation to deny summary judgment on Count V as to those defendants. Likewise,

DOC Defendants have shown an absence of a genuine dispute of material fact with respect

to Harpster and Snyder and their knowledge of Zong's abuse. Thus, they have established

as a matter of law that these defendants did not have an opportunity to intervene to stop

Zong's abuse of Landau. Accordingly, the Court will not adopt the recommendation of the

R&R with respect to Harpster and Snyder and will grant them summary judgment on the

failure-to-intervene claim in Count V. However, DOC Defendants have not shown an

absence of a genuine dispute of material fact with respect to Foster and Miller because of

Landau's testimony regarding their participation in the betting pool/lottery. The Court will

adopt the recommendation of the R&R as to the failure-to-intervene claim in Count V as to

Foster and Miller and will deny summary judgment on this count as to them.

### 3. FAILURE TO SUPERVISE (COUNT VI)

Landau next raises a failure-to-supervise claim against DOC Defendants Lamas,

Glunt, Ferguson, Harpster, Rogers, Garman, and Salamon. (Doc. 88 ¶¶ 301-07). This

claim is based on an allegation that these defendants either failed to implement policies to

prevent Zong's assault or implemented policies that permitted the assault to happen

(Lamas, Glunt, and Ferguson) (Doc. 88 ¶¶ 302-03), implemented policies that undermined

DOC's response to the assault and treatment of Landau as a victim (Glunt, Ferguson,

Garman, and Salamon) (Doc. 88 ¶¶ 304, 306), or directly failed to supervise Zong which

allowed her to assault Landau (Harpster and Rogers) (Doc. 88 ¶ 305).

DOC Defendants seek summary judgment on this claim on the grounds that there is

no evidence the named defendants were involved in or had knowledge of Zong's assault of

Landau. (Doc. 179 at 12-13). They again do not cite to the factual record, which Landau

points out in his opposition brief. (Doc. 195 at 14).

The R&R recommends granting summary judgment on the failure-to-supervise claim

in Count VI as to every named defendant except Harpster and Rogers because "we simply

cannot discern any factual basis for concluding that these supervisory officials had

contemporaneous knowledge of, participation in, or acquiescence in, the alleged conduct of

their subordinates. Instead, their involvement in this matter appears to begin after Zong's alleged abuse of Landau came to a close." (Doc. 204 at 42). The R&R further states that:

> [f]urther, while Landau points to one other alleged instance of sexual abuse at Rockview, that incident, standing alone, does not describe a "prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)." *Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998).

(Doc. 204 at 42). The R&R does not cite to the factual record in reaching its conclusion on this claim.

Landau objects to the R&R's recommendation to grant summary judgment to all named defendants except Harpster and Rogers on his failure-to-supervise claim. He argues that Magistrate Judge Carlson disregards most of his claim, which he asserts has less to do with the defendants' knowledge of Zong's specific misconduct and more to do with their contributing to an environment where Zong's abuse could occur. (Doc. 219 at 9-12). He also argues that the defendants were aware of a risk of harm because of DOC's internal policies prohibiting sexual contact between inmates and employees, state law outlawing such conduct, and the PREA and associated federal regulations. (*Id.* at 11-12). DOC Defendants respond to this objection by repeating their argument from their summary judgment brief that "there is no evidence the five named management Defendants, Lamas, Glunt, Ferguson, Garman, and Salamon, were personally involved in or knew of the relationship between Zong and Plaintiff." (Doc. 220 at 6). They also contend that "[a]s far

20

as the *Freeman* incident in the Chapel, one incident does not make a pattern." (*Id.* at 8).

Landau replies that DOC Defendants miss the thrust of his failure-to-supervise claim by

focusing solely on knowledge of Zong's misconduct, that DOC Defendants and the R&R fail

to address the evidence Landau has cited in the record with respect to DOC Defendants'

deficient implementation of policies, and that "the *Freeman* incident" is more than one

incident because it involved rapes committed by an officer over a series of years in the

same location where Zong assaulted Landau (the prison chapel at SCI-Rockview). (Doc.

221 at 3-8). The Court will adopt the R&R in part and not adopt it in part.

"[A] plaintiff can hold a supervisor liable for failure to train or supervise if the

supervisor has exhibited deliberate indifference to the plight of the person deprived."

*Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Carter v.

City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)); *see also Laurensau v. Romarowics*,

528 F. App'x 136, 140 n.2 (3d Cir. 2013) ("A supervisor can be held individually liable if his

failure to properly train or supervise a subordinate caused a deprivation of the plaintiff's

constitutional rights."). "To hold a supervisor liable for deliberate indifference, the plaintiff

must establish that: (1) existing policy or practice creates an unreasonable risk of

constitutional injury; (2) the supervisor was aware that the unreasonable risk was created;

(3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or

practice." *Merring*, 558 F. Supp. 2d at 547 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118

(3d Cir. 1989)).

21

The Court starts with the easier part of its analysis: resolution of the failure-to-supervise claim as to Harpster and Rogers. The Court has already noted that DOC Defendants have shown an absence of a genuine dispute of material fact as to Harpster's knowledge of Zong's abuse of Landau. As the failure-to-supervise claim is also premised on subjective knowledge of risk, it must fail with respect to Harpster. The Court will not adopt the R&R's recommendation to permit the claim to proceed against him. But because there are factual disputes with respect to Rogers' knowledge of Zong's abuse, the Court will adopt the recommendation of the R&R to permit Landau's failure-to-supervise claim against Rogers to proceed to trial.

Turning to Lamas, Glunt, Ferguson, Garman, and Salamon, the situation is more complex. Although neither party nor the R&R explicitly states it, the dispute of the parties regarding this claim mainly centers on the first two elements from the test from *Sample*: (1) whether the existing policy or practice creates an unreasonable risk of injury, and (2) whether the supervisor was aware of the unreasonable risk created. *Sample*, 885 F.2d at 1118. The Court agrees with Landau that the R&R does not fully address the scope of his failure-to-supervise claim, which mostly centers on the policies or lack thereof that affected the atmosphere at SCI-Rockview and SCI-Benner to make Landau's alleged sexual assault more likely and his recovery as a victim more difficult. Nevertheless, the Court agrees with the conclusion reached by the R&R to grant summary judgment to DOC Defendants Lamas, Glunt, Ferguson, Garman, and Salamon because Landau cannot sustain his claim based on

the factual record presented to show that any failure to supervise constitutes an actionable Eighth Amendment claim.

In discussing his evidence in favor of his failure-to-supervise claim in his objections to the R&R, Landau quotes his brief in opposition to DOC Defendants' third motion for summary judgment where he cites excerpts of the record. (Doc. 219 at 9-12 (quoting Doc. 195 at 9-12)). The citations are voluminous but do not demonstrate the required subjective knowledge of the defendants as to an awareness of unreasonable risk. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)) ("The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.") In many cases, the evidence cited only relates to DOC Defendants' failures to implement certain policies. (*See, e.g.*, Doc. 195 at 10 (citing Doc. 197, Exhibit 23-g at 16:22-18:3) (testimony of Tim Miller, DOC representative on PREA affairs, that he was unaware if Glunt and Lamas appointed a PREA compliance manager at SCI-Rockview)). In other cases, the evidence cited relates to Landau specifically, but only with respect to events after his alleged abuse by Zong and without an indication that the official was deliberately indifferent to a substantial risk of serious harm to Landau. (*See, e.g.*, Doc. 195 at 11 (citing Doc. 196-7 at 88:23-93.9 (Glunt recounting part of his investigation into Zong's sexual contact with Landau))).

As DOC Defendants point out, Landau attempts to establish the required subjective knowledge of a substantial risk of serious harm by essentially bootstrapping his claim into a Section 1983 action seeking enforcement of DOC internal policies or the PREA, in effect arguing that "the excessive risk" of failing to abide by these policies "was so obvious that the official must have known of the risk." *Beers-Capitol*, 256 F.3d at 133 (citing *Farmer*, 511 U.S. at 842). However, courts in this Circuit have concluded that a failure to implement or adhere to policies and the PREA does not constitute an Eighth Amendment claim. *See Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017)[6] (affirming dismissal of Eighth Amendment deliberate indifference claims "to the extent that they relied on the Prison Rape Elimination Act and other policies" and noting that the plaintiff "may not attempt to enforce statutes or policies that do not themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim"); *Davis v. Romig*, No. 16-cv-184, 2017 U.S. Dist. LEXIS 57710, at *2-3 & n.2 (M.D. Pa. Apr. 13, 2017) (dismissal of Eighth Amendment supervisory claim); *Lee v. Kramer*, No. 17-cv-190, 2017 WL 6729865, at *2 (W.D. Pa. Nov. 8, 2017) (dismissal of Eighth Amendment claim premised on failure to comply with PREA).

---

[6] Landau's attempts to distinguish *Bowens* are unavailing. (Doc. 221 at 10.) He argues that the case involved an attempt to revive an Americans with Disabilities Act ("ADA") claim under the PREA. (*Id.*) While *Bowens* did involve an ADA claim, it also involved an Eighth Amendment deliberate indifference claim, and the Third Circuit explicitly stated that it was impermissible for the plaintiff to bring such a claim solely for violations of the PREA and other policies. *Bowens*, 674 F. App'x at 137.

Landau insists that he is not presenting a cause of action under the PREA and cites an unpublished District of New Jersey case to argue that evidence of a failure "to adopt and enforce the national standards may, or may not, be evidence of deliberate indifference depending on the circumstances." *Walsh v. N.J. Dep't of Corrections*, No. 17-cv-2442, 2017 WL 3835666, at *3 n.5 (D.N.J. Aug. 31, 2017). The footnote cited from *Walsh* is dicta, as the court dismissed the pro se inmate's complaint asserting a cause of action under the PREA. *Walsh* does not establish that a plaintiff may solely rely on a failure to abide by the PREA as establishing the requisite level of subjective knowledge to sustain an Eighth Amendment claim. Landau cites no case establishing that proposition. And after a careful parsing of the Amended Complaint and the papers filed in conjunction with summary judgment, it is clear to the Court that Landau is essentially attempting to bring a cause of action under the PREA and DOC policies regarding prevention of and response to sexual assault claims.[7]

Finally, to the extent Landau argues that DOC Defendants have shown deliberate indifference and possessed subjective knowledge of an unreasonable risk of harm because of the rapes committed by a previously employed DOC corrections officer such that it would have been necessary to implement specific policies, the Court does not find such an argument convincing. Isolated instances of rapes committed by a single former prison

---

[7] Landau claims that this Court "has already ruled that the plaintiff stated viable claims for violations of his constitutional rights under several theories." (Doc. 221 at 10-11 (citing Doc. 51)). However, the Court's prior Memorandum Opinion regarding a motion to dismiss a previous version of the complaint in this action, which did not raise the argument presented here, is of no relief to Landau.

official do not establish a pattern "that such harm has in fact occurred on numerous occasions," *see Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989), nor that DOC Defendants would have had knowledge that Zong had a pattern of abusing inmates. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir. 2001) (granting summary judgment in favor of defendant police chief on a supervisory liability claim when evidentiary record did not show defendant police officer exhibited a pattern of excessive use of force against animals even when the officer had used force against animals in the past nor showed the defendant police chief's knowledge of any such pattern). Landau also fails to show how any injury to Landau resulted from the absence of a specific policy. Thus, the Court will grant summary judgment to all defendants named in Count VI with the exception of Rogers.

### 4. FAILURE TO TRAIN (COUNT VII)

Landau's final Eighth Amendment claim is a failure-to-train claim in Count VII asserted against DOC Defendants Garman, Salamon, Evans, Dooley, Gallo, and Young. (Doc. 88 ¶¶ 308-13). Landau alleges that the defendants named in Count VII failed to implement adequate training to prevent and respond to instances of sexual abuse (Garman, Salamon, Dooley, Gallo, and Young) (Doc. 88 ¶¶ 309-10, 312) or failed to screen Zong properly before employing her (Evans) (Doc. 88 ¶ 311).

DOC Defendants move for summary judgment on this claim, arguing in part that Landau is without evidence to prove his claim because training is providing to staff and staff (including Zong) knew sexual relations with an inmate is prohibited. (Doc. 179 at 12).

Landau responds that the record shows that any training provided was deficient. (Doc. 195 at 7-12). DOC Defendants reply that "so many courts have held that no training is required to teach employees *not* to commit sexual assaults." (Doc. 202 at 9 (citing *Pauls v. Green*, 816 F. Supp. 2d 961, 971 (D. Idaho 2011)).

The R&R recommends granting summary judgment to DOC Defendants on the failure-to-train claim, contending that the undisputed facts show that "(1) training was given; (2) the training was understood; but (3) in at least some instances the training was disregarded." (Doc. 204 at 43). Landau objects to the R&R, arguing that the R&R fails to cite to record evidence and that the facts are not undisputed because Zong's training transcript indicates that her training only occurred on February 27, 2014, months after she allegedly began abusing Landau. (Doc. 219 at 14-16). DOC Defendants respond to Landau's objections, reiterating that staff does not need training to not commit sexual assaults, that "alleged shortcomings to PREA training" are not actionable, and that Landau cannot establish that DOC Defendants had the requisite level of subjective knowledge to sustain his claim. (Doc. 220 at 10-12). Landau replies that the record shows that training was not provided. (Doc. 221 at 9-11). The Court will overrule Landau's objection to the R&R and adopt the recommendation of the R&R to grant summary judgment to DOC Defendants on Landau's failure-to-train claim.

"[A] plaintiff can hold a supervisor liable for failure to train or supervise if the supervisor has exhibited deliberate indifference to the plight of the person deprived."

*Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)); *see also Laurensau v. Romarowics*, 528 F. App'x 136, 140 n.2 (3d Cir. 2013) ("A supervisor can be held individually liable if his failure to properly train or supervise a subordinate caused a deprivation of the plaintiff's constitutional rights."). "[T]he plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring*, 558 F. Supp. 2d at 547 (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Further, "[w]here the § 1983 claim is premised upon the defendant's alleged failure to properly train his or her subordinates, the plaintiff 'must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Hayes v. Erie Cty. Office of Children & Youth*, 497 F. Supp. 2d 684, 697-98 (W.D. Pa. 2007) (quoting *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)) *amended by* 497 F. Supp. 2d 709 (W.D. Pa. 2007).

The R&R could have delved more deeply into the facts surrounding the provision of training but it is of little moment. As DOC Defendants note, it seems beyond dispute that training is not needed to instruct corrections officers to not sexually abuse inmates. *See, e.g., Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Specific or extensive

training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."); *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("[W]e cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."). Thus, a failure to provide such training cannot constitute deliberate indifference to a substantial risk of serious harm or in itself demonstrate a causal nexus with possible harm resulting from a failure to provide training. Even with respect to training regarding responding to incidents of sexual abuse, Landau does not explain how a failure to provide such training could constitute a deliberate indifference to a substantial risk of serious harm or demonstrate a causal nexus to harm. For example, Landau does not come forward with facts showing a dispute for trial as to whether he received necessary medical or psychological attention or care. Indeed, with respect to his IIED claim, Landau cites reports from prison medical and mental health staff indicating that he received care. (Doc. 177-10, Doc. 177-12, Doc. 177-17 (now located in Doc. 182-1, Doc. 182-2, Doc. 182-3), Doc. 219-4). Moreover, as DOC Defendants point out, Zong was investigated, disciplined, and fired for having sexual relations with Landau. (Doc. 180 ¶¶ 27, 33, Doc. 194 ¶¶ 27, 33). Similarly, with respect to Evans' liability for purportedly failing to properly screen Zong before hiring her, Landau does not point to evidence that establishes deliberate indifference or a causal nexus to harm. Instead, the factual support that Landau provides for Evans' inclusion in Count VII is limited to the statements of a DOC Rule 30(b)(6) witness that there were no statements in Zong's

personnel file indicating that responses were received from her personal or professional references. (Doc. 195 at 7 (citing Doc. 197, Exhibit 23-b at 29:7-23)).

The Court's conclusion that Landau has failed to prevent summary judgment on his failure-to-train claim is reinforced by what Landau admits is in the factual record. PREA training did occur, at least by February 2014, although Landau disputes its effectiveness. (Doc. 194 ¶ 28 (citing Doc. 187-1 at 10:18-17:12 (Zong discussing training), Doc. 219 at 15 (discussing Zong's training transcript)). Zong's alleged abuse continued after this training and various DOC officials allegedly failed to respond to Zong's abuse, confirming the R&R's conclusion that training was given but then disregarded. The fact that the abuse continued also confirms that any failure to provide training before February 2014 did not cause Landau's injuries. And as the R&R notes, Landau cites no legal authority to establish a failure-to-train claim when training is provided but disregarded. (Doc. 204 at 43).

Accordingly, the Court will adopt the R&R's recommendation as to Landau's failure-to-train claim (Count VII), overrule Landau's objections, and grant summary judgment in favor of all named defendants (Garman, Salamon, Evans, Dooley, Gallo, and Young) as to the failure-to-train claim (Count VII).

## B. FOURTEENTH AMENDMENT CLAIM – INVASION OF PRIVACY (COUNT III)

Landau raises a claim for invasion of his right to privacy under the Fourteenth Amendment against a group of DOC corrections officers at SCI-Rockview: Rogers,

Bumbarger, Foster, Nicholas, Cienfuegos, and Miller.[8] Landau alleges that these individuals invaded his privacy by engaging in "wagering through a pool or lottery in which they publicized and speculated about Zong's sexual abuse of plaintiff . . . [and also] publicly discussed and speculated about what Zong was doing to plaintiff." (Doc. 88 ¶ 290).

DOC Defendants seek summary judgment on this claim by arguing that Landau "has no evidence any such betting pool/lottery occurred . . . [and that] Singer denies telling Plaintiff about any such betting pool/lottery." (Doc. 179 at 10). Landau responds by stating that evidence proving his claim "would have been stored electronically in the DOC mail system and video archive, in password-protected online accounts, and on private electronic devices owned by DOC Defendants, their co-workers, and Zong." (Doc. 195 at 15). He argues he asked for this information in discovery but that "[r]esponses show that content and devices were improperly destroyed after the inception of this action." (Id.) He concludes that he "shows the likelihood of improper spoliation." (Id.) DOC Defendants reply that "Plaintiff's hearsay statement as to what non-defendant Singer told him is not enough to create a triable issue." (Doc. 202 at 7-8). They also argue that Landau "waived any privacy claims by telling friend and cellmate Brown and other inmates in his inner circle about his relation [sic] and activities with Zong" and that DOC Defendants were not acting

---

[8] As discussed in Section IV.E., *infra*, Landau also challenges the same conduct allegedly perpetrated by the same defendants in two state law counts for defamation and invasion of privacy.

under color of state law for purposes of Landau's Section 1983 action when engaging in any purported betting pool/lottery. (*Id.* at 8-9).

The R&R concludes that Landau's Fourteenth Amendment invasion of privacy claim "turns largely on a credibility assessment of the completely contradictory accounts of Landau and these correctional defendants, a task which cannot be undertaken at this time through a motion for summary judgment." (Doc. 204 at 36-37). DOC Defendants object that the R&R did not address their argument that the betting pool/lottery was not conduct that occurred under color of state law and that the R&R incorrectly concluded that Landau has evidence to support his claim based on the hearsay statement of non-defendant Singer. (Doc. 212 at 4-5). Landau did not submit any brief in opposition to DOC Defendants' objections. The Court will adopt the recommendation of the R&R to deny summary judgment on this claim and will overrule DOC Defendants' objection.

The Court previously outlined the law governing Fourteenth Amendment right to privacy claims in this case in denying Defendants' motion to dismiss an earlier version of Landau's complaint that pled his claim as a Fourth Amendment violation rather than a Fourteenth Amendment violation:

> "The United States Constitution does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 178 (3d Cir. 2005). "The Supreme Court has, however, found certain 'zones of privacy' in the amendments to the Constitution." *Id.* These zones of privacy have provided the basis for two privacy interests protected under the Fourteenth Amendment. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011). "The first privacy interest is the 'individual interest in avoiding

disclosure of personal matters,' and the second is the 'interest in independence in making certain kinds of important decisions.'" *Id.* (quoting *C.N.*, 430 F.3d at 178). It is the former of these two interests that is relevant here. "'[T]he right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable [right] whose constitutional significance we have recognized in the past.'" *C.N.*, 430 F.3d at 179 (alterations original) (quoting *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999)). This right to privacy, however, is not absolute and can be overcome by a government interest in disclosure that is "genuine, legitimate and compelling." *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000).

In the Third Circuit, the key question is whether the disclosed information "is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *C.N.*, 430 F.3d at 179 (quoting *Fraternal Order of Police v. City of Philadelphia*, 812 F.2d 105, 112 (3d Cir. 1987)). Here, Plaintiff has adequately pleaded that certain Defendants disclosed information about Defendant Zong's sexual abuse of Plaintiff. A person's identity as a victim of a sexual assault or rape is of a sufficiently personal nature as to be entitled to a privacy interest. *See Doe 1 v. Cnty. of Fayette*, 2014 WL 5493814, at *3 (W.D. Pa. 2014) (holding that a minor had a privacy interest in "her identity and the allegation that she is a victim of sexual abuse"). Thus, Plaintiff has a constitutionally recognized privacy interest in his identity as a victim of sexual abuse and rape.

(Doc. 51 at 9-11).

The Court begins with DOC Defendants' argument that the betting pool/lottery was not conduct that occurred under color of state law, which the R&R did not address. To act under color of state law means to use authority derived from the state to cause the violation of constitutional rights. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982) ("Our cases have . . . insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."). "The actions of a state

official may 'constitute state action for purposes of the Fourteenth Amendment' even when they exceed the limits of the official's authority." *Zion v. Nassan*, 283 F.R.D. 247, 267 (W.D. Pa. 2012) (quoting *Lugar*, 457 U.S. at 929). Thus, an official "may sometimes act both 'under color of state law' and beyond the scope of his or her employment." *Zion*, 283 F.R.D. at 267 (citing *Hickenbottom v. Nassan*, No. 03-cv-223, 2007 U.S. Dist. LEXIS 24336, at *139-40 (W.D. Pa. Mar. 29, 2007)).

DOC Defendants argue that the betting pool/lottery was not conduct "done while exercising responsibilities pursuant to state law," but fail to cite to the factual record or elaborate in any way. This is insufficient to establish that the conduct was not undertaken under color of state law. Indeed, as discussed below and in Section IV.E, *infra*, the factual record indicates that in discussing the betting pool/lottery with respect to his state law defamation and invasion of privacy claims, Landau claims that he was informed by DOC corrections officers who talked with him about the betting pool/lottery. (Doc. 187-2 at 97:5-100:17 (Landau's deposition testimony in which he indicates that non-party Singer told him the names of the participants); *see also* Doc. 187-2 at 98:20-99:20 (Defendant Nicholas telling Landau about the lottery during his transfer to SCI-Benner)).

Additionally, DOC Defendants' objection that Landau's evidence regarding the existence of the betting pool/lottery is inadmissible hearsay from a non-party DOC corrections officer overlooks the existence of Landau's testimony regarding what a party defendant, Nicholas, allegedly told him about the lottery. (*Id.*) This could constitute a non-

hearsay statement of an opposing party, Fed. R. Evid. 801(d)(2), and may be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2) (objection only valid if "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). Accordingly, the Court will adopt the R&R, overrule DOC Defendants' objection, and deny summary judgment on Landau's Fourteenth Amendment invasion of privacy claim.[9]

## C. FOURTEENTH AMENDMENT CLAIM – EQUAL PROTECTION (COUNT IX)

Landau's final federal constitutional claim is a Fourteenth Amendment equal protection claim asserted against DOC Defendants Lamas, Glunt, Ferguson, Tice, Hoover, Vance, Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers. (Doc. 88 ¶¶ 314-19). The precise scope of this claim varies as to each defendant, but it is essentially reduced to an allegation that Landau was "treated differently and more harshly than similarly situated prisoners whose abusers were male," either directly by his transfer to SCI-Benner and associated alleged punishment and harassment or indirectly through DOC's failure to properly screen and discipline Zong because she is female. (*Id.*)

---

[9] The Court will not consider Landau's evidence spoliation argument with respect to potential electronic evidence regarding the betting pool/lottery as a basis to deny summary judgment. Landau has not come forward with evidence accessible to the Court that any purported destruction of evidence by DOC Defendants was purposeful. *See Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (noting that spoliation occurs where: "the evidence was in the party's control; the evidence is relevant to the claims and defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party"). Much of the evidence that Landau sets forth in favor of his spoliation argument was submitted on CD to the Court and consists of documents that are mostly in an unreadable format. (Doc. 196 at 1-2 (Appendix of Exhibits stating that Exhibits 21-28 are being "filed on CD to preserve the metadata"), Doc. 197 (CD submission to the Clerk of Court)). The Court is uncertain why Landau filed this evidence on a CD, as metadata would seem to be of little relevance here. To the extent that Landau wishes to file a motion prior to trial on a matter this Court has ruled is appropriate for trial, he may do so.

DOC Defendants seek summary judgment on the grounds that Landau cannot establish that he was treated differently than other inmates who were victims of male abusers, as those individuals were also transferred to other DOC facilities and placed in restrictive housing. (Doc. 179 at 9). They also argue that there was a rational basis for Landau's transfer (his personal safety) and that the part of the claim regarding treatment of Zong "has nothing to do with Plaintiff individually." (Id.) In the R&R, Magistrate Judge Carlson agrees with DOC Defendants that Landau was not treated differently than other inmates who were victims of sexual abuse and recommends granting summary judgment on the equal protection claim. (Doc. 204 at 29-31).

Landau objects to this recommendation, contending that "[t]he R&R misconstrues the comparators" as victims of sexual abuse rather than victims of sexual abuse whose abusers were male and further arguing that the factual record does show that victims of female abusers like Landau are treated more harshly than victims of male abusers. (Doc. 219 at 16-18). DOC Defendants respond to Landau's objections, arguing that there is no evidence that victims of male abusers were treated differently than Landau and that DOC Defendants do not control the prosecution of perpetrators. (Doc. 220 at 12-13). Landau reiterates in his reply to DOC Defendants' response to his objections that "[t]he comparators show a critical gender differential in the outcomes of cases where the assailant was charged with institutional sexual assault." (Doc. 221 at 11-13). The Court will adopt the recommendation of the R&R as to Landau's equal protection claim (Count IX), overrule

Landau's objections, and grant summary judgment in favor of DOC Defendants Lamas, Glunt, Ferguson, Tice, Hoover, Vance, Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers on the equal protection claim (Count IX).

Despite his hinting at a class of related individuals similar to him who have suffered sexual abuse at the hand of female perpetrators in his Objections to the R&R (Doc. 219 at 16-18), Landau's equal protection claim is pled as a "class of one" claim where he alleges that he as an individual was treated "differently and more harshly than similarly situated prisoners whose abusers were male" (Doc. 88 ¶¶ 314-19). As the R&R notes, the appropriate legal standard for an inmate's class of one equal protection claim is rational basis review, and Landau "bears the burden of showing that he has been arbitrarily treated differently from similarly-situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest." (Doc. 204 at 30 (quoting *Rosa-Diaz v. Harry*, No. 17-cv-2215, 2018 WL 3432547, at *11 (M.D. Pa. June 14, 2018)); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

The parties have not made parsing the equal protection allegations nor the evidence in the factual record regarding the claim an easy task for the Court. In moving for summary judgment on this claim and as noted above, DOC Defendants argue that: 1) Landau acknowledged in his deposition testimony that he was aware of other inmate victims of sexual abuse who were transferred to other prisons and placed in restrictive housing; 2) the

reason for Landau's transfer had a rational basis—Landau's safety—because Zong had a

relationship with Defendant Snyder at SCI-Rockview; and 3) the remainder of the equal

protection claim is premised on DOC Defendants' treatment of Zong, which does not have

anything to do with Landau individually. (Doc. 179 at 9). DOC Defendants do not cite to the

factual record in their brief to establish any of these propositions. And upon its own

examination of DOC Defendants' statement of material facts (Doc. 180) and Landau's

statement in response (Doc. 194) and their respective citations to the record, the Court can

only discern one relevant discussion of Landau's treatment as compared to victims of male

abusers from Landau's deposition transcript as referenced in paragraph 26 of the parties'

respective factual statements. DOC Defendants present this fact as "Plaintiff is aware of

two other male inmates who were victims of sexual abuse that were transferred including

one whose abuser was female and was placed on the RHU." (Doc. 180 ¶ 26). Landau

attempts to dispute this fact by stating "[t]he statement mischaracterizes the content of the

transcript, which is a text that speaks for itself," but makes no citation to a specific portion of

the transcript to contradict the statement. (Doc. 194 ¶ 26). The portion of the transcript

cited by DOC Defendants does support the fact they assert—Landau was aware of two

other victims of sexual abuse who were transferred, a victim of an individual named

Freeman and a victim named Kay. (Doc. 187-2 at 140:5-141:7).[10] Kay was the victim of a

---

[10] In this portion of Landau's deposition, he refers to Freeman as a victim. However, later in his deposition, he states that Freeman is a male abuser. (Doc. 187-2 at 200:24-201:15). Landau also refers to Freeman as a male abuser in his Objections to the R&R. (Doc. 219 at 16-17).

female abuser, and Landau testified that: "He [Kay] was involved sexually with Ms. Jackson. They put him in a hole. And put a camera in front of the hole for four months until they transferred him. He went to Albion." (Doc. 187-2 at 140:11-14). Landau further stated that he did not immediately report the April 2014 incident with Zong because "I didn't want to sit in the hole for four months with a camera in front of me, and transferred [sic], and called a rat." (Id. at 140:24-141:1). Landau also stated that he was transferred to SCI-Benner and that he was in administrative custody for about four weeks. (Id. at 141:2-7).

This evidence does not support Landau's equal protection claim in Count IX. To start, Landau does not clearly establish how the part of his equal protection claim that is premised on DOC Defendants' treatment of Zong, such as her hiring, discipline, and eventual prosecution, sustains his equal protection cause of action. See Hill, 455 F.3d at 239 (stating a claim for a "class of one" equal protection action requires that a plaintiff state in part that "the defendant treated **him** differently than others similarly situated") (emphasis added). In particular, Landau's complaint that Zong was not prosecuted as harshly as male perpetrators of abuse challenges something that is not within DOC Defendants' control, as they correctly argue. Indeed, much of Landau's focus in his deposition regarding his alleged unequal treatment, and to which Landau cites in his objections to the R&R (Doc. 219 at 16-18) seems to be placed on the treatment of sexual abusers by the criminal justice system. (Doc. 187-2 at 201-03 (discussing prosecution and sentencing of male abusers such as "Freeman" and "Best")). For actions within DOC Defendants' control, DOC

Defendants establish, and Landau concedes, that Zong was investigated, disciplined, and fired. (Doc. 180 ¶¶ 27, 33, Doc. 194 ¶¶ 27, 33). Landau does not point to evidence in the record to establish that Zong was treated differently as a female corrections officer in order to establish his somewhat amorphous indirect equal protection claim. Instead, he improperly only refers to allegations in his Amended Complaint. (Doc. 219 at 16 (citing Doc. 88 ¶¶ 316-18 for proposition that "defendants failed to subject Zong to the screening and surveillance that male trainees undergo, failed to train staff and inmates to recognize female abusers, and failed to train and supervise her rigorously because she was female, . . . with the result that Zong was able to abuse the plaintiff").)

Landau's remaining argument, that he was directly treated more harshly than victims of male abusers, is also not supported by the factual record. Landau complains of his transfer to SCI-Benner, his placement in restrictive housing, and his being "subjected to ridicule." (Doc. 219 at 16-17). He states that Kay, a victim of a female abuser, was similarly mistreated. (Id. at 17). However, he does not provide any citation to any evidence to establish that a victim of a male abuser was directly treated less harshly. (Doc. 219 at 17 (stating, without citation, that "Freeman's victim was transferred, but he was not disciplined and subjected to ridicule as Mr. Landau was").) Indeed, in the portion of his deposition where Landau remarks on how Freeman's victim and Kay were treated, Landau does not say that Freeman's victim was treated less harshly, but rather that Freeman's victim was also transferred to another facility. (Doc. 187-2 at 140:5-9). The R&R points out this

admission that both Freeman's victim and Kay were transferred. (Doc. 204 at 29-31).
Landau also submits other evidence in his Objections to the R&R regarding how victims of
male abusers were treated better than him that consists of sex offender registry records
compiled by Landau's counsel with her added commentary. (Doc. 219-3). This does not
suffice to support Landau's equal protection claim.

Accordingly, the Court will adopt the recommendation of the R&R to grant summary
judgment in favor of all named defendants (Lamas, Glunt, Ferguson, Tice, Hoover, Vance,
Evans, Dooley, Gallo, Young, Salamon, Garman, Harpster, and Rogers) on Landau's equal
protection claim (Count IX) and overrule Landau's corresponding objections.

### D. IIED CLAIM (COUNT XIV)

Landau also brings an IIED claim against Zong and certain DOC Defendants:
Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Miller, Harpster, Tice, Hoover, Vance,
Glunt, Ferguson, and Salamon. The basis of the IIED claim varies with respect to each
Defendant, including allegations of knowing about Zong's abuse but failing to do anything,
engaging in the lottery/betting pool, retaliating against or otherwise punishing Landau when
responding to his reports of sexual abuse by Zong, and refusing to provide Landau with
adequate medical and psychological care. (Doc. 88 ¶¶ 331-44).

In their third motion for summary judgment, DOC Defendants argue that Landau has
not provided competent medical evidence of emotional distress, and so his IIED claim is
barred. (Doc. 179 at 6). DOC Defendants also argue that sovereign immunity bars much of

Landau's IIED claim, as DOC Defendants were intentionally acting within the scope of their official duties when they took actions of which Landau complains, such as moving him to restrictive housing. (*Id.* at 7). They further contend that there is no evidence that the betting pool/lottery occurred or that Landau was denied necessary care. (*Id.* at 8). Landau responds that the conduct of DOC Defendants was against DOC policy, and thus, there is a factual question as to whether DOC Defendants acted outside the scope of their official duties. (Doc. 195 at 6). He also argues that there is evidence in the record from prison medical providers regarding Landau's emotional distress to support his IIED claim and that expert testimony is unnecessary. (*Id.* at 12-13).

In the R&R, Magistrate Judge Carlson recommends granting summary judgment to DOC Defendants on the IIED claim on the grounds of sovereign immunity for all of their conduct except the betting pool/lottery, which he states does not fall within the scope of DOC employees' official duties. (Doc. 204 at 25-26). He further finds that the portion of the IIED claim related to the betting pool/lottery should be dismissed because Landau did not provide competent medical testimony to support his injury. (*Id.* at 28-29). Landau objects to the R&R for the same reasons set forth in his opposition to the third motion for summary judgment. (Doc. 219 at 19-23).

The Court will adopt the recommendation of the R&R to dismiss Landau's IIED claim in Count XIV, but finds it unnecessary to address DOC Defendants' argument or the R&R's finding that sovereign immunity bars the claim. Instead, the Court agrees with the finding in

the R&R that Landau has failed to point to competent medical evidence in the factual record that he has experienced severe emotional distress.

"To state a plausible claim for intentional infliction of emotional distress, a plaintiff must allege sufficient facts demonstrating that (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and that (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur." *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir.2001)). "Outrageous or extreme conduct has been defined by the appellate courts of this Commonwealth as conduct that is so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (internal quotation marks omitted). That is,

> it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort,

*Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998) (citing Restatement (Second) of Torts § 46 cmt. d). Furthermore, a plaintiff must demonstrate physical injury or harm to sustain a cause of action for intentional infliction of emotional distress. *Fewell v. Besner,* 664 A.2d 577, 582 (Pa. Super. Ct. 1995) (citing *Kazatsky v. King David Mem'l Park, Inc.,* 527 A.2d 988, 995 (Pa. 1987) ("Those truly damaged should have little difficulty in procuring reliable

43

testimony as to the nature and extent of their injuries. . . . [A]t the very least, existence of the alleged emotional distress must be supported by competent medical evidence.")); *Criveillaro v. Pa. Power & Light Co.,* 491 A.2d 207, 210-11 (Pa. Super. Ct. 1985) (finding that symptoms of depression, nightmares, anxiety requiring psychological treatment, and ongoing mental, physical and emotional harm sufficiently stated physical manifestations of emotional suffering to sustain a cause of action).

The only medically-related evidence in the factual record to support Landau's claim of injury related to severe emotional distress are three, one-page documents that were submitted by DOC Defendants, not Landau, as part of their statement of facts for their second motion for summary judgment. (Doc. 177-10, Doc. 177-12, Doc. 177-17, now located in Doc. 182-1, Doc. 182-2, Doc. 182-3). At one point, Landau questioned if these documents even related to him. (Doc. 190 ¶¶ 22, 24, 28). Nevertheless, Landau moved to strike these documents from the record as improperly revealing sensitive health information in violation of an earlier protective order entered in the case. (Doc. 183). Magistrate Judge Carlson denied the motion but placed the documents under seal. (Doc. 184). Despite his earlier objection that the documents were filed in unredacted form, Landau himself later filed unredacted copies of these records on the public docket as attachments to his Objections to the R&R. (Doc. 219-4).

Landau now relies on these documents to support his IIED claim and objects that the R&R did not directly consider these documents. (Doc. 219 at 19-21). He also clashes with

DOC Defendants over whether case law requires that competent medical evidence is needed in the form of an expert report. (*Id.*) However, as noted above, Pennsylvania courts require that recovery for IIED is impossible "without expert medical confirmation that the plaintiff actually suffered the claimed distress . . . [and that] existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky*, 527 A.2d at 995. This is a requirement even in cases where a plaintiff claims that his emotional distress has been caused by a physical impact. *Gray v. Huntzinger*, 147 A.3d 924, 928-30 & n.4 (Pa. Super. Ct. 2016) (distinguishing cases regarding negligent infliction of emotional distress and affirming *Kazatsky* requires IIED claims to be supported by expert testimony). Both *Kazatsky* and *Gray*, as well as numerous other cases from Pennsylvania courts, use the word "expert" to describe what type of evidence is needed to establish severe emotional distress to support an IIED claim. *See, e.g.*, *Kazatsky*, 527 A.2d at 995; *Gray*, 147 A.3d at 928; *Cassell v. Lancaster Mennonite Conference*, 834 A.2d 1185, 1189 n.3 (Pa. Super. Ct. 2003) ("Expert medical testimony is necessary to establish that a plaintiff actually suffered the claimed emotional distress."); *Shiner v. Moriarty*, 706 A.2d 1228, 1239 (Pa. Super. Ct. 1998) ("Expert medical testimony is required to establish a claim for intentional infliction of emotional distress.").

Landau further objects that "[t]here is no requirement to retain an expert witness, produce the report contemplated by Rule 26(a)(2) of the Federal Rules of Civil Procedure, and disclose it in discovery." (Doc. 221 at 14). Citing Federal Rule of Civil Procedure

56(c)(2), he also argues that he could produce admissible evidence at trial supporting his

IIED claim, even if evidence is not admissible at trial "in its present state." (Doc. 221 at 15).

Courts adjudicating IIED claims, however, have cited favorably to formal expert reports

when analyzing IIED claims. *Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 257 (M.D. Pa.

2009) (denying defendants summary judgment as to certain plaintiffs on an IIED claim

because plaintiffs produced expert reports from doctors indicating they suffered from panic

attacks and PTSD). And even assuming a formal expert report is not needed, the

documents in the record do not provide competent medical evidence to support his claim of

severe emotional distress and do not establish that he would be able to produce the

required admissible evidence at trial.[11] The first document, titled "PROGRESS NOTES,"

appears to be from Laura C. Dunkle, a DOC physician's assistant. (Doc. 182-1, Doc. 219-4

at 1). Most of the document contains notes regarding Landau's complaints of shoulder pain

in July 2014. The other part of the document contains notes on what appears to be

Landau's recounting of sexual intercourse with Zong but does not contain any evidence of

severe emotional distress.[12] The other two documents do not clearly appear to be from

---

[11] Landau's assertion in a footnote of his reply to DOC Defendants' opposition to his Objections that "[t]hese medical records are the best evidence available while the plaintiff remains in prison" is not convincing. He cites no authority for this proposition. (Doc. 221 at 15 n.5). He could have provided affidavits from medical professionals in the prison or sought a court order seeking leave for a medical professional to examine Landau to produce an expert report or at least an affidavit or declaration setting forth how that professional would testify at trial. *See Zimmerman*, 654 F. Supp. 2d at 257 (plaintiffs were current and former prisoners in a Pennsylvania county prison and produced expert reports of treating physicians to satisfy requirement of competent medical evidence).

[12] Some of the notes are illegible, but the legible portion in relevant part states that Landau "was caught having sex [with] a female CO" and "[d]enied burning or urination, discharge or pain in his genitals."

medical professionals at all but rather "mental health staff." (Doc. 176 ¶¶ 24, 28, Doc. 182-2, Doc. 182-3, Doc. 219-4 at 2-3). Neither of these documents, titled "POST SEXUAL ASSAULT INTERVIEW" (Doc. 182-2, Doc. 219-4 at 2) and "MENTAL HEALTH CONTACT NOTE" (Doc. 182-3, Doc. 219-4 at 3), contain evidence of Landau experiencing severe emotional distress.[13] *See Gilmore v. Manpower, Inc.*, 789 F. Supp. 197, 199 (W.D. Pa. 1992) (citing the Restatement (Second) of Torts § 46 cmt. j as IIED "requir[ing] emotional distress so severe that 'no ordinary man could be expected to endure it'").

Accordingly, the Court adopts the recommendation of the R&R to grant summary judgment in favor of DOC Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, Miller, Harpster, Tice, Hoover, Vance, Glunt, Ferguson, and Salamon on Landau's IIED claim (Count XIV) and overrules Landau's objections.[14]

### E. DEFAMATION AND INVASION OF PRIVACY STATE LAW CLAIMS (COUNTS XV AND XVI)

The final two counts of Landau's Amended Complaint are Pennsylvania state law claims for defamation and invasion of privacy. Landau alleges that certain DOC corrections

---

[13] The "POST SEXUAL ASSAULT INTERVIEW" document from July 2014 states that Landau had "deep feelings, [and] feels his heart was ripped off, no closure, angry sometimes," did not express or elicit suicidal ideation, with "[d]epressed [and] [a]nxious" "[f]eeling/[a]ffect." (Doc. 182-2, Doc. 219-4 at 2). The "MENTAL HEALTH CONTACT NOTE" document from August 2014 states that Landau "denied SI; said he was emotionally raped, but, not physically," and that he "appeared anxious" with "[a]nxious" "[f]eeling/[a]ffect." (Doc. 182-3, Doc. 219-4 at 3).

[14] Although Zong did not join in DOC Defendants' third motion for summary judgment seeking summary judgment on the IIED claim in Count XIV, the Court will grant summary judgment in Zong's favor on this claim as well as DOC Defendants. The Court's basis for granting summary judgment on the IIED claim is that Landau has not established that he suffered severe emotional distress. It would be internally inconsistent to allow this claim to proceed against Zong because the Court has determined that the claim cannot succeed against any defendant.

officers (DOC Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller) defamed him "by establishing, publicizing, and participating in a lottery or betting pool among staff at SCI Rockview, through which they placed wagers on the outcome of the sexual abuse that Zong was inflicting on plaintiff and speculated about intimate details." (Doc. 88 ¶ 346). He contends that this conduct also constitutes an invasion of privacy (Doc. 88 ¶ 351). He further alleges that Zong's conduct of "stalk[ing]" and her sexual harassment and abuse is actionable as an invasion of Landau's privacy. (Doc. 88 ¶ 350).

In their third motion for summary judgment, DOC Defendants argue that the one-year statute of limitations in Pennsylvania for defamation and invasion of privacy claims bars Landau's claims. (Doc. 179 at 4-5). They also contend that Landau has no evidence that the lottery/betting pool occurred and that he cannot prove the elements of the torts based on the factual record. (Id. at 5-6). Landau responds that his claims are not time barred because he only learned of the names of the participants in the lottery/betting pool on July 10, 2014 and filed his original complaint within one year of that date. (Doc. 195 at 13). He also argues that there is record evidence to support his claims. (Id.)

In the R&R, Magistrate Judge Carlson does not address the factual merits of Landau's defamation and invasion of privacy claims and instead focuses on the statute of limitations issue. He concludes that the claims are indeed time barred because over one year had passed since Landau's allegations of harmful conduct and the filing of the original complaint. (Doc. 204 at 19-22) He further finds that under applicable law it is no excuse

48

that Landau may have only learned the names of the participants in the lottery/betting pool one month after he claims he originally learned of the existence of the lottery/betting pool in June 2014. (*Id.* at 21-22). The Court also agrees that Landau's state law defamation and invasion of privacy claims are time barred. Thus, it will grant the motion for summary judgment as to these claims.

As the R&R notes, under Pennsylvania law, "[a]n action for libel, slander or invasion of privacy" "must be commenced within one year." 42 Pa. Stat. and Cons. Stat. Ann. § 5523(1). "[T]he general rule is that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009) (citing *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)). While the "discovery rule" may act to toll the statute of limitations when a plaintiff does not know he is injured, it is inapplicable in cases when a plaintiff is merely uncertain who or what caused his injury. *Robinson v. Lowe's Home Ctrs., Inc.*, No. 06-cv-4403, 2007 WL 2739187, at *2 (E.D. Pa. Sept. 19, 2007) ("Uncertainty as to the identity of a defendant is not the sort of lack of knowledge which triggers the discovery rule."); *see also Bradley v. Conner*, No. 07-cv-1347, 2007 WL 4241846, at *4-5 (W.D. Pa. Nov. 29, 2007) (citing, *inter alia*, *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 501 (Pa. Super. Ct. 1984), *abrogated on other grounds by Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175 (Pa. 2012)) ("State and federal courts in Pennsylvania, applying Pennsylvania law, have expressly rejected application of the discovery rule where a plaintiff merely lacks knowledge as to the defendant's identity.")

Here, Landau alleges that the betting pool/lottery took place on or before June 13, 2014, as the Amended Complaint states "[t]hat was the day when the lottery concluded." (Doc. 88 ¶ 152). Crucially, he does not dispute the substance of DOC Defendants' statement of undisputed material facts with respect to when he "first learned of the alleged betting pool/lottery [which was] when he was transferred from SCI-Rockview to SCI-Benner Twp. on June 13, 2014." (Doc. 180 ¶ 19, Doc. 194 ¶ 19). Landau states that although he learned of the existence of the betting pool/lottery on June 13, 2014, he did not learn of the names of the individuals who participated in the betting pool/lottery until "some time after July 10, 2014." (Doc. 194 ¶ 19 (citing Doc. 187-2 at 97:5-100:17 (Landau's deposition testimony in which he indicates that Singer told him the names of the participants)). Based on these undisputed facts, Landau should have filed suit by June 13, 2015 to not run afoul of the statute of limitations, but his original complaint was not filed until July 5, 2015. (Doc. 1). Thus, Landau's objection that the R&R failed to find that it is genuinely in dispute when he could have filed his defamation and invasion of privacy claims (Doc. 219 at 18-19) is directly contradicted by the portions of the factual record that Landau himself cites and by the clear dictates of Pennsylvania law that the statute of limitations is not tolled by uncertainty regarding the identity of a defendant.[15] Accordingly, the Court will adopt the

---

[15] In the portion of Landau's deposition to which he cites in his response to DOC Defendants' undisputed statement of material facts (Doc. 194), Landau claims that he knew of the identity of the "winner" of the betting pool/lottery from Defendant Nicholas when he was transferred to SCI-Benner (i.e., in June 2014). (Doc. 194 ¶ 19 (citing Doc. 187-2 at 98:20-99:20)). Therefore, even if it was the case that Landau was excused from filing his claims until he knew the identity of the participants, he still should have filed this action by June 2015 because he did know the identity of at least one participant within a year of that time.

recommendation of the R&R to grant summary judgment to DOC Defendants on the defamation and invasion of privacy claims in Counts XV and XVI, overrule Landau's objections to this portion of the R&R, and grant summary judgment in favor of DOC Defendants Rogers, Bumbarger, Foster, Nicholas, Cienfuegos, and Miller on the defamation and invasion of privacy claims (Counts XV and XVI).[16]

## V. CONCLUSION

For the reasons discussed above, the Court will sustain in part and overrule in part DOC Defendants' Objections to the R&R (Doc. 211), overrule Landau's Objections to the R&R (Doc. 219), adopt in part and reject in part the R&R (Doc. 204), and grant in part and deny in part DOC Defendants' third motion for summary judgment (Doc. 178). The Court addresses the other motions for summary judgment and respective R&Rs in separate Memorandum Opinions and issues a single Order setting forth the Court's resolution of all pending motions for summary judgment and accompanying R&Rs and listing Landau's remaining claims for trial.

Robert D. Mariani
United States District Judge

---

[16] As Zong has not joined in DOC Defendants' third motion for summary judgment, she does not advance the affirmative defense of statute of limitations as to the state law invasion of privacy claim in Count XVI. This claim against Zong will proceed to trial, as it is based on identical conduct challenged in Landau's Fourteenth Amendment invasion of privacy claim in Count III that the Court has found involves matters in dispute.